**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Joseph Randall HOBBS, Jr.,**
**Defendant–Appellee.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Randall HOBBS, Jr.,**
**Defendant–Appellant.**

**Nos. 97–4393, 97–4440.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1997.

Decided Feb. 18, 1998.

ARGUED: Steven Randall Ramseyer, Asst. U.S. Atty. Roanoke, VA, for Appellant. Nancy C. Dickenson, Lebanon, VA, for Appellee. ON BRIEF: Robert P. Crouch, Jr., U.S. Atty., Roanoke, VA, for Appellant.

Before WILKINSON, Chief Judge, ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, reversed in part, and vacated and remanded in part by published opinion. Judge ELLIS wrote the opinion, in which Chief Judge WILKINSON and Senior Judge MERHIGE joined.

## OPINION

ELLIS, District Judge:

A jury convicted Joseph Randall Hobbs of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court declined to apply the enhanced sentencing provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because it determined that Hobbs's three prior burglaries were not offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The government appeals this ruling. In his cross-appeal, Hobbs argues that there was insufficient evidence to support the § 922(g)(1) conviction because, according to him, the only inculpatory evidence came from an uncharged accomplice. For the reasons that follow, we affirm the conviction, but remand for sentencing under the ACCA.

## I

On October 6, 1994, Hobbs entered the B & W Market in Washington County, Virginia, picked up a carton of Marlboro cigarettes, and walked to the cashier, where he brandished a handgun and demanded all the money in the register. Before the cashier could comply, Hobbs reached into the register, grabbed the money, and fled the store with the cash and the cigarettes. Waiting in a car outside the B & W Market was Greely Ball, who had driven Hobbs to the market in Hobbs's car. Once Hobbs emerged from the store, he and Ball drove to the home of Hobbs's daughter, Marlena Hobbs. On arrival there, Hobbs took a .22 caliber rifle out of his car and hid it under his daughter's bed because, according to Ball, Hobbs "wanted to get[the rifle] out of his car." Hobbs then left his car at his daughter's and had her drive

him and Ball to Ball's trailer. From there Ball and Hobbs proceeded to drive to South Carolina in Ball's car. Hobbs took with him the handgun he had used in the robbery of the B & W Market. This handgun was never recovered.

The police subsequently located Hobbs's car in front of Marlena Hobbs's apartment and found several .22 caliber shells in the car. They also obtained Marlena Hobbs's consent to search her apartment and found inside a stack of one-dollar bills, a carton of Marlboro cigarettes, and a .22 caliber rifle under the bed. Marlena Hobbs testified that she had never had a rifle in her bedroom prior to her father's arrival at her apartment.

On August 14, 1996, a grand jury returned a superseding indictment that included two counts, both alleging violations of 18 U.S.C. §§ 922(g)(1) and 924(e).[1] Count I charged Hobbs with possession of a .22 caliber Winchester semi-automatic rifle, and Count II charged him with possession of the unrecovered handgun used in the October 6, 1994 robbery of the B & W Market. A jury returned a verdict of guilty as to the rifle, and not guilty as to the handgun.

At sentencing, the government noted that Hobbs had been convicted of four prior burglaries. To substantiate this, the government introduced copies of four indictments from Washington County, Virginia. The indictments charged Hobbs with the burglaries of (i) Mongle's Grocery in Greendale, Virginia, on September 12, 1976; (ii) McCroskey's Grocery in Benhams, Virginia, on September 13, 1976; (iii) Vernon Barker's Grocery in Benhams, Virginia, on September 14, 1976; and (iv) Star Market in Damascus, Virginia, on September 19, 1976. The government offered no other evidence to support its contention that these were the dates on which the burglaries occurred. Hobbs disputed the dates, testifying instead at sentencing that the first three burglaries all occurred within

---

1. Five months earlier, on March 14, 1996, the grand jury had returned a five-count indictment against Hobbs including four drug-related counts and one count charging violations of §§ 922(g)(1) and 924(e). On Hobbs's motion, the four drug-related counts were severed from the fifth count. At his trial on the four drug counts, Hobbs was acquitted. The fifth count of the original indictment was included as the first count in the superseding indictment.

one hour of each other on a Sunday, while church services were being held.[2]

■ Based on Hobbs's four prior convictions, the Presentence Investigation Report included a recommendation that Hobbs be classified as a career criminal under the ACCA, which provides that any person who has been convicted of three separate violent felonies is subject to a fifteen-year minimum sentence. *See* 18 U.S.C. § 924(e). Accordingly, the government argued that Hobbs should receive the enhanced sentence prescribed by that statute. The district court, however, credited Hobbs's testimony to the effect that the burglaries of Mongle's, McCroskey's, and Barker's all occurred within one hour of each other, and hence found that these three burglaries should be deemed a single offense for sentencing purposes. Therefore, the district court concluded that Hobbs had not been convicted of three *separate* felonies, and thus it declined to sentence him under the ACCA. Instead, the district court imposed a sentence of sixty-three months, to run concurrently with the state sentence for armed robbery imposed for the 1994 robbery of the B & W Market.[3]

**II**

■ The ACCA provides that a defendant convicted of a weapons offense under § 922(g) shall receive a minimum fifteen-year sentence if the defendant "has three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed *on occasions different from one another.*" 18 U.S.C. § 924(e)(1) (emphasis added).[4] The district court, based on its factual finding that the three burglaries occurred within the space of an hour,[5] reached the legal conclusion that the three offenses did not occur "on occasions different from one another." [6] We review this legal conclusion *de novo. See United States v. Letterlough,* 63 F.3d 332, 334 (4th Cir.1995).

■ The central issue in this case is whether Hobbs's three prior burglary convictions were part of a single, continuous criminal episode, or instead whether they were offenses "committed on occasions different from one another." Resolution of this question is controlled by *Letterlough,* in which we announced the proper analysis for addressing such questions under § 924(e). In doing so, we adopted the test that is now applied in

---

**2.** Although Hobbs also testified that he thought the three burglaries occurred on September 13, 1976, that date was a Monday. Hobbs's testimony contradicted the dates indicated on the several indictments, namely September 12, 13, and 14. Notably, Virginia law does not require indictments to state the exact date on which a crime was committed, provided that time is not the essence of the offense. *See* Va.Code § 19.2–226(6) (providing that no indictment shall be quashed simply because the date was imperfectly stated); *Clinebell v. Virginia,* 235 Va. 319, 368 S.E.2d 263, 264 (1988) (affirming appellate court's ruling that indictment need not state exact date).

**3.** *See* U.S.S.G. § 5G1.3 (allowing for a second sentence to be imposed to run concurrently with a first, undischarged sentence when the first sentence has been taken into account in the Guidelines calculation of the second). Hobbs and Ball were convicted of armed robbery in separate state-court trials. Hobbs's armed robbery conviction occurred after the instant offense, so it is not a "previous conviction" for purposes of § 924(e). *See United States v. Talley,* 16 F.3d 972, 974–75 (8th Cir.1994) ("previous conviction" must occur prior to *violation* of § 922(g), and not simply prior to conviction or sentence

for that violation, to constitute a § 924(e) predicate offense).

**4.** Hobbs's 1976 burglary convictions constitute "violent felon[ies]." *See* 18 U.S.C. § 924(e)(2)(B)(ii).

**5.** The district judge's finding that the three burglaries occurred within an hour of each other is reviewed for clear error. *See United States v. Crump,* 120 F.3d 462, 468 (4th Cir.1997) ("We review the district court's findings of fact at sentencing only to assure ourselves that they are not clearly erroneous." (citing 18 U.S.C. § 3742(e))). Yet, here the government, while noting disagreement with this finding, presents its appeal assuming, *arguendo,* that Hobbs did in fact commit the three burglaries within the span of one hour. Our review proceeds on the same basis.

**6.** Specifically, the district judge stated:

I think that it's just really one transaction. They occurred, according to the evidence, they occurred within a period of one hour. They were three break ins while church services were going on, the same pattern, same vicinity, same individuals.

Joint Appendix at 136.

every circuit.[7] Convictions will be considered as having occurred on occasions different from one another under the ACCA if each "arose out of a separate and distinct criminal episode." *Letterlough*, 63 F.3d at 335 (emphasis and internal quotation marks omitted). In other words, the predicate ACCA offenses must be those "that can be isolated with a beginning and an end." *Id.* In engaging in this separate-and-distinct analysis, sentencing courts consider (i) whether the offenses occurred in different geographic locations; (ii) whether the offenses were substantively different; and (iii) "whether the offenses involved multiple victims or multiple criminal objectives." *See id.* at 335–36 (footnotes omitted). These factors may be considered together or independently, and "if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes." *Id.* at 336. In other words, it does not matter for sentencing purposes if the several crimes are part of a larger criminal venture, as long as each constitutes, by itself, a "complete and final transaction." *See id.* at 337.

■ Worth noting here is that there is a difference between (i) the *Letterlough* analysis for determining whether prior offenses were committed "on occasions different from one another" for purposes of the ACCA, and (ii) the analysis for determining whether prior offenses were "related" as part of a "common scheme or plan" for purposes of applying the career-offender provision of the Sentencing Guidelines, *see* U.S.S.G. § 4B1.1 (defendant is career offender if he has two prior felony convictions); § 4B1.2 (felony convictions are counted as provided in § 4A1.1); § 4A1.1 commentary (criminal history computation is governed by definitions in § 4A1.2); § 4A1.2 application note 3 (crimes that are part of a "common scheme or plan" are considered related, and thus constitute, together, only one "conviction"

for purposes of the defendant's career-offender status). Prior offenses can be "related" under § 4A1.2 and yet occur on different occasions such that a defendant would not be subject to the enhanced sentence of the ACCA even though he would fall under § 4B1.1. Indeed, the Guidelines provide three routes for determining whether prior sentences should be considered related, two of which do not require that the offenses have occurred on the same occasion. In this regard, convictions will be considered related (i) if the underlying offenses were part of a common scheme or plan, (ii) if they were consolidated for trial or sentencing, or (iii) if the offenses "occurred on the same occasion." *See* U.S.S.G. § 4A1.2 application note 3. Whether the language of this last criterion and the almost identical factor in the ACCA addressing "occasions different from one another" should be given the same interpretation is a question neither presented nor reached here. What is clear, however, is that the category of cases in which the prior offenses will be considered "related" under the Guidelines is broader than the category of cases in which the prior offenses will be deemed to have occurred on the same occasion for purposes of the ACCA. It thus stands to reason that the test for the application vel non of an enhanced sentence under § 4B1.1 is different from the *Letterlough* test for an enhanced sentence under § 924(e). *See United States v. Maxey*, 989 F.2d 303, 307 (9th Cir.1993) (refusing to apply § 4A1.2 case law to a § 924(e) sentence because the two provisions have "nothing to do" with each other); *United States v. Medina–Gutierrez*, 980 F.2d 980, 983 (5th Cir. 1992) ("Thus, what matters under § 924(e) is whether three violent felonies were committed on different occasions; whether they are considered 'related cases' under § 4A1.2 is irrelevant."); *cf.* U.S.S.G. § 4B1.4 application note 1 (differentiating sentencing under § 4B1.1 and § 924(e)).[8]

---

7. At the time we decided *Letterlough*, we observed that the D.C. Circuit had yet to adopt this test. Subsequently, however, that court has joined our sister circuits in this respect. *See United States v. Jackson*, 113 F.3d 249, 253–54 (D.C.Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 252, 139 L.Ed.2d 180 (1997).

8. Two additional points support this conclusion. First, the career-offender common-scheme-or-plan analysis grants considerable weight to whether the underlying convictions involved similar substantive offenses. *See United States v. Breckenridge*, 93 F.3d 132, 138 (4th Cir.1996) (noting that "significant to a finding that crimes

■ Application of the *Letterlough* factors to the instant facts compels the conclusion that each of the three burglaries occurred on an occasion different from the others. Under the first *Letterlough* criterion, we consider the geographic location of the various offenses. It is undisputed that the three burglaries all occurred at least a mile apart from each other, and in two different towns. Consequently, Hobbs drove from one store to the next. These facts suggest that each burglary was a "complete and final transaction." *See* 63 F.3d at 337. This factor, therefore, suggests that each of Hobbs's prior burglaries was "a separate and distinct criminal episode." 63 F.3d at 335.

The second factor asks whether the nature of the various offenses differed in any substantive way. Here, they did not. Each involved a break-in of a small, unoccupied country store from which Hobbs stole food, cash, and/or dry goods. This factor, then, while not enough on its own to suggest that the offenses occurred on the same occasion, would bolster such a conclusion, if that conclusion were also supported by other facts.

The final criterion focuses on the multiplicity of victims and criminal objectives. Though the objectives of these various burglaries appear similar—to steal foodstuffs—certainly there were multiple victims: each store was under separate ownership. And the fact that there were multiple victims decisively tips the scales in favor of concluding that each burglary was a "separate and distinct criminal episode." *See* 63 F.3d at 335. That is, in the circumstances this third criterion weighs heavily enough that it "dispositively segregate[s]" the spree into three separate occasions. *See Letterlough*, 63 F.3d at 336 (stating that "if any one of the factors has a strong presence," it can outweigh the others).

Other courts, facing analogous situations, have similarly treated this last factor as dispositive in holding that a crime spree should be treated as consisting of "separate and distinct" offenses. For example, in *United States v. Antonie*, 953 F.2d 496 (9th Cir. 1991), the defendant committed two armed robberies, approximately forty minutes apart, in two different towns. *See id.* at 498. The Ninth Circuit, relying on the fact that the robberies involved different victims in different locales, treated the two robberies as separate predicates for purposes of sentencing under § 924(e). *See id.* at 499. A similar case is *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir.1994), in which the defendant and his cohorts broke into a dry cleaners at a strip mall, knocked down the adjoining wall that led to a doughnut shop, and then forced open a door to an adjoining insurance company. They burgled all three establishments in a span of thirty-five minutes. *See id.* at 1018, 1022. On these facts, the Seventh Circuit found that each burglary constituted a separate and distinct episode under § 924(e) because the defendant actively chose to proceed from one crime to the next, even though he could have stopped after each. *See id.* at 1022. In both *Antonie* and *Hudspeth*, circuit panels found invocation of the ACCA proper notwithstanding both the substantive similarities of the crimes committed and their temporal and geographic proximity. It was sufficient that the defendants committed their crimes against different victims in different loca-

are 'related' is the fact that they involved 'similar substantive offenses'" (quoting *United States v. Fonville*, 5 F.3d 781, 784 (4th Cir.1993))). The presence of such a substantive similarity understandably would support the conclusion that the convicted offenses were part of a common scheme. The substantive similarity of the crimes plays a lesser role, however, in the ACCA analysis, which focuses instead chiefly on whether the convicted offenses were perpetrated on different victims at different times. *See infra* notes 9–10 and accompanying text. The fact that the two tests accord different weight to this factor is further evidence that they embody distinct inquiries.

Second, only three of the eight factors that drive the common-scheme-or-plan inquiry, which is set forth in *Breckenridge*, 93 F.3d at 138, inform the § 924(e) inquiry, which is set forth in *Letterlough*. Because the former test considers a broader range of criteria, it follows that the test for sentencing under §§ 4B1.1 and 4A1.2 cannot control sentencing under § 924(e)(1). Accordingly, *Breckenridge*, a § 4A1.2 case remanded to, and apparently relied on by, the same district judge who sentenced Hobbs, is inapposite to disposition of the instant appeal.

tions.[9] As the Seventh Circuit observed, "[c]ases interpreting the ACCA clearly uphold the minimum fifteen-year sentence enhancement for criminals who commit separate crimes against different individuals while on a spree, within a short period of time, provided that the perpetrator had the opportunity to cease and desist from his criminal actions at any time." *Hudspeth,* 42 F.3d at 1020; *see also Letterlough,* 63 F.3d at 337 (noting that when defendant had over an hour and a half to deliberate and think of his next move, ample time had passed such that offenses would be considered separate). Clearly, Hobbs could have ceased his string of burglaries on that fateful morning at any time; as he drove his car from store to store, there was ample time to reflect and plan each subsequent crime. That Hobbs committed the burglaries in quick succession does not alter this conclusion.[10] Accordingly, each of the three burglaries should be treated as a separate and distinct crime, and thus each constitutes an occasion different from the others such that application of the ACCA is mandated.

## III

We turn now to Hobbs's challenge to the sufficiency of the evidence. Hobbs contends in his cross-appeal that the government's only evidence linking him to the rifle was the testimony of his accomplice Greely Ball, who was not charged with any federal crime, and that this testimony was "so slight and biased that the trier of fact could not have found beyond a reasonable doubt that Hobbs actually possessed the rifle." Appellee's Brief at 2. It is well settled that in weighing the sufficiency of the evidence to support a criminal conviction, we must view the evidence and all reasonable inferences to be drawn from it in the light most favorable to the government. Moreover, to affirm the conviction, we need only determine that, based on that evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *See United States v. Rahman,* 83 F.3d 89, 93 (4th Cir.) (§ 922(g)(1) conviction) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* —— U.S. ——, 117 S.Ct. 494, 136 L.Ed.2d 387 (1996). Given this standard, Hobbs's challenge must fail. To show a § 922(g)(1) violation, the government must prove three elements: (i) that the defendant was a convicted felon at the time of the offense; (ii) that he voluntarily and intentionally possessed a firearm; and (iii) that the firearm traveled in interstate commerce at some point. *See Rahman,* 83 F.3d at 93. There is abundant evidence to support a jury finding each of these three elements beyond a reasonable doubt.

First, Greely Ball testified that Hobbs wanted to get the rifle out of the car, and that Hobbs put the rifle under his daughter's bed.[11] Second, Marlena Hobbs

---

9. We cited both *Hudspeth* and *Antonie* with approval in *Letterlough.* For examples of other decisions reaching similar holdings, see *United States v. Tisdale,* 921 F.2d 1095, 1099 (10th Cir. 1990) (three burglaries at one mall during the night were separate criminal episodes); *United States v. Washington,* 898 F.2d 439, 442 (5th Cir.1990) (two burglaries of same clerk at same store were separate when they occurred several hours apart); and numerous cases cited in *Hudspeth,* 42 F.3d at 1019–21.

10. The Seventh Circuit's elaboration of this point is worth quoting:

Under the ACCA, the relevant inquiry as to the timing of multiple crimes is simple: were the crimes *simultaneous* or were they *sequential?* ... Hudspeth's three burglaries were *sequential* (committed in succession), and not *simultaneous;* it is physically impossible for one person to commit three burglaries simultaneously at three different locations. Because Hudspeth's crimes were committed sequentially, against different victims, at different times, and at different locations, they were clearly crimes "committed on occasions different from one another" as required under the ACCA.... A defendant who commits three crimes sequentially will have made three distinct and deliberate choices to commit a crime. *Hudspeth,* 42 F.3d at 1021, 1022 n. 12.

11. Hobbs asserts that Ball's testimony is entitled to no weight because Ball is a convicted felon. This assertion is unpersuasive. Ball's testimony *is* entitled to due consideration on appeal even though he is a felon. In considering the sufficiency of the evidence on appeal, we do not review a witness's credibility. *See United States v. Reavis,* 48 F.3d 763, 771 (4th Cir.1995). Moreover, the uncorroborated testimony of a defendant's accomplice is sufficient to support a guilty verdict. *See United States v. Baker,* 985 F.2d 1248, 1255 (4th Cir.1993). In any event, in

testified that, although she never saw her father with a gun, she did not have a rifle in her apartment prior to her father's arrival. Third, the police recovered the .22 caliber rifle from under the mattress, and they found .22 caliber shells in Hobbs's car. These facts amply support the inference that Hobbs possessed a firearm. Moreover, because Hobbs stipulated that he was a convicted felon, and because there was credible testimony that the rifle had crossed state lines, the government succeeded in proving the necessary elements of the § 922(g)(1) offense.

### IV

Because the evidence was sufficient to support a finding that Hobbs possessed the rifle, his § 922(g)(1) conviction is affirmed. However, the district court's ruling that the three burglaries constituted one criminal episode is reversed. Accordingly, the conviction is affirmed, the sentence is vacated, and this matter is remanded so that Hobbs may be sentenced under the ACCA.

*AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.*

addition to Ball's testimony, the jury was entitled to rely on the independent testimony of Marlena Hobbs and the investigating agent.

It is worth noting that Hobbs also asserts that his own testimony regarding the date and time of the three burglaries is credible and dispositive. Hobbs, too, is a convicted felon, though that fact does not appear, by his lights, to cast any doubt on his own veracity.