# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JACOB C. MAYNARD,
*Defendant-Appellant.*

No. 01-4605

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

LEONARD S. KERSEY,
*Defendant-Appellant.*

No. 01-4607

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

LEONARD S. KERSEY,
*Defendant-Appellant.*

No. 03-4367

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-00-99)

Submitted: July 31, 2003

Decided: October 9, 2003

Before MOTZ and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Grafton E. Skaggs, SKAGGS & SKAGGS, Fayetteville, West Virginia; Clinton W. Smith, Charleston, West Virginia, for Appellants. Kasey Warner, United States Attorney, L. Anna Crawford, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Jacob Maynard and Leonard Kersey (the Appellants) were convicted by a jury of conspiracy to manufacture counterfeit United States obligations, 18 U.S.C. § 371 (2000) (Count 1), and aiding and abetting the passing of counterfeit obligations, 18 U.S.C. §§ 472, 2 (2000) (Counts 2-4).[1] Maynard and Kersey contend on appeal that their convictions were obtained through the use of false or perjured testimony on the part of two government witnesses, Alicia Bennett and Cecil Green.[2] Kersey also appeals the district court's denial of co-

---

[1]Jacob Maynard was acquitted on Count Five, which charged witness intimidation on April 23, 2000. Jacob Maynard's son, Danny, was also convicted on Counts One through Four; his appeal is being decided separately. Christopher Priestly was convicted on Counts One, Two, and Four, but has not appealed.

[2]Although Jacob Maynard and Leonard Kersey have completed their terms of imprisonment and have been released, this appeal is not moot because they have not yet completed their three-year terms of supervised release. *United States v. Lira-Barraza*, 941 F.2d 745, 746 n.1 (9th Cir. 1991).

defendant Danny Maynard's post-judgment motion for new trial based on newly discovered evidence, in which Appellants joined.[3] We affirm the convictions and the district court's order denying the new trial motion, and deny Appellants' motions to remand for an evidentiary hearing on newly discovered evidence.

On December 19, 1999, the Appellants, Jacob's son Danny Maynard, and fifteen-year-old Cecil Green drove around in Jacob Maynard's van visiting convenience stores and small businesses where counterfeit notes were passed. Eighteen-year-old Jonathan Adkins was also present.[4] That evening, Leonard Kersey was arrested by an off-duty deputy when he attempted to pass a twenty-dollar bill at a gas station. The others waiting in the van were taken into custody, questioned, and released. The Appellants and Danny Maynard were indicted on the above charges in April 2000.

At the trial, Green testified that he was with the Appellants, Danny Maynard, and Adkins on December 19, 1999, when they used a computer, scanner, and printer to manufacture counterfeit twenty-dollar bills. Green said they all helped to cut and trim the bills before driving around to convenience stores and gas stations where Kersey passed the bills.

Alicia Bennett testified that she dated Danny Maynard for about two months in the fall of 1999. She said that, on December 9, 1999, she accepted Danny Maynard's invitation to drive to Lincoln County, West Virginia, to attend a party where Danny and others would be playing music. She said she and Danny Maynard set out in Jacob Maynard's van with Leonard Kersey, Jacob Maynard, Chris Priestly, Rachel Skeens, and Minnie Maynard, Danny Maynard's mother. Bennett testified that, on the way, they stopped at a small out-building in a field where Danny Maynard, Leonard Kersey, and Chris Priestly got out of the van for about fifteen minutes and returned with a clipboard with a sheet of uncut twenty-dollar bills on it. Bennett testified that, after making eye contact with Danny Maynard, she felt frightened and

---

[3]Kersey and Jacob Maynard adopted the argument in Danny Maynard's reply to the government's response to the new trial motion.

[4]Adkins was not charged and testified for the defense.

threatened. She said she asked Jacob Maynard to take her home and he did so. On the trip home, according to Bennett, Danny Maynard grabbed her neck, squeezed it, and told her that, if she talked about what she had seen or heard, he would kill her. She said she did not go to a party in Lincoln County with Maynard on that day or any other day.

In the early hours of December 13, 1999, Bennett's trailer was destroyed by fire. She testified that, during the preceding evening, she was at a party at Terry Hurley's house where she overheard Danny Maynard urging Cecil Green to set her trailer afire and instructing him how to do it. Bennett testified that she left Hurley's, got some clothes from her trailer, and got a ride to her uncle's house, where she spent the night. Cecil Green testified that he set the fire after Danny Maynard offered him money and a car to do so, and that Danny Maynard was with him when he started the fire.

Defense witnesses contradicted some of the details of Alicia Bennett's testimony, calling into question her assertion that she had never attended a party in Lincoln County with Danny Maynard, and that she had left Terry Hurley's house before the fire to spend the night at her uncle's house. Terry Hurley testified that Bennett passed out after drinking beer at his house and spent the night there. His testimony was corroborated to some degree by Cecil Green and by Robin Foster, who said she gave Bennett a ride from Hurley's house to Bennett's uncle's house the next morning. Michael Baisden testified that he had traveled to Lincoln County with Danny Maynard to play music at a party twice in the fall of 1999, and that Danny Maynard was accompanied by Alicia Bennett on one occasion.

Cecil Green's testimony was contradicted by Jonathan Adkins, who was in Jacob Maynard's van with the Defendants on December 19. Adkins testified that he did not hear any conversation about counterfeit money or know that anyone was passing counterfeit bills until after he had been taken into custody. In addition, Danny Haynes testified that he was with Danny Maynard in Maynard's house when Bennett's nearby trailer burned. Green was also questioned about his grand jury testimony, in which he said that Danny Maynard had set the fire, although he had admitted setting the fire at Maynard's direction when the police questioned him about it on December 19, 1999.

Despite these challenges to the testimony given by Bennett and Green, the jury found that the government had presented credible evidence concerning the counterfeiting activity and convicted the Maynards and Kersey of the counterfeiting offenses.

Appellants noted timely appeals, alleging that the government used false or perjured testimony by Alicia Bennett and Cecil Green to obtain their convictions. While the appeals were pending, Danny Maynard, joined by Appellants, filed in the district court a motion for new trial based on newly discovered evidence, which consisted of an affidavit from Rachel Skeens that contradicted some of Bennett's testimony. After the government responded, additional affidavits and statements challenging Bennett's testimony on certain points were submitted. We granted Appellants' motion to hold the appeals in abeyance until the district court ruled on the new trial motion, and deferred action on their motions to remand for an evidentiary hearing. In January 2003, the district court denied the motion for new trial.

*Use of False or Perjured Evidence*

Appellants claim that Bennett's and Green's testimony was false and perjured and that, without this testimony, the evidence was insufficient to sustain their convictions. Due process is violated if a prosecutor knowingly uses perjured testimony or fails to disclose that testimony used to obtain a conviction is false. *United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994). However, mere inconsistencies in testimony are not enough to warrant relief; a defendant must show that the testimony was false and that the prosecutor or another government official knew the testimony was false. *United States v. Griley*, 814 F.2d 967, 970-71 (4th Cir. 1987).

Appellants point out that Bennett's testimony was contradicted by defense witnesses in certain respects and that Green gave inconsistent accounts of his participation in the arson. They also claim that Green's description of how the counterfeit twenty-dollar bills were made was not consistent with the case agent's testimony as to the process necessary to create counterfeit bills.[5] We find the argument

---

[5]The agent's testimony was not included in the joint appendix.

unpersuasive. Although the Appellants' witnesses created a credibility issue for the jury with respect to the testimony of both Bennett and Green, Appellants have not met their burden of showing that the government knowingly permitted either Bennett or Green to give false testimony at trial.

Jacob Maynard makes the additional argument that his conviction was not supported by sufficient evidence because only Cecil Green testified that he knew that counterfeit bills were being passed on December 19, 1999, and Green's testimony was not credible. However, the uncorroborated testimony of a defendant's accomplice is enough to support a guilty verdict. *United States v. Hobbs*, 136 F.3d 384, 390 n.11 (4th Cir. 1998). The jury found Green credible as to the counterfeiting activity. A reviewing court does not review a witness' credibility. *Id.*

*Newly Discovered Evidence*

The district court applied the test set out in *United States v. Custis*, 988 F.2d 1355 (4th Cir. 1993), which directs that a new trial should be granted based on newly discovered evidence only if five elements are satisfied:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Id.* at 1359; *see also United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989) (same).

In its order denying the motion for new trial based on newly discovered evidence, the district court focused primarily on Rachel Skeens' affidavit because it was the only affidavit timely filed with the new trial motion. Skeens stated that she had not traveled with Ali-

cia Bennett in Jacob Maynard's van to Lincoln County on December 9, 1999, as Bennett had testified, and that Bennett became drunk on December 13, 1999, and spent the night at Terry Hurley's house. Danny Maynard had also filed an affidavit from Joseph Perdue with his reply to the government's response to his motion. Perdue asserted that, on or about December 9, 1999, he traveled to a residence in Lincoln County with the Appellants, Danny Maynard, and Michael Baisden. Perdue said they went back to play a second time, and were accompanied on that trip by Alicia Bennett and Angela Fenstermacher. He said they made no stops on the way, that Bennett was affectionate to Danny Maynard, and that he witnessed no threats to Bennett. The other affidavits and statements, all inconsistent in some respect with Bennett's testimony, were filed even later.

The district court found that Skeens' information was not newly discovered because Skeens testified before the grand jury and her testimony was given to the defense a month before trial. It found that Danny Maynard had not alleged facts from which the court could infer diligence on his part in that his attorney's investigator merely stated in an affidavit that he tried to locate Skeens for two days without success. The court found that Skeens' testimony would have been no more than cumulative or impeaching, and material only to the issue of Bennett's credibility. Although Bennett's credibility was an important issue, the *Custis* test requires that a defendant satisfy each of the five elements. The court found that the other affidavits and statements also failed to meet the *Custis* test.

Appellants argue in this appeal that the district court erred when it applied the *Custis* test, and should instead have used the test set out in *United States v. Roberts*, 262 F.3d 286, 293 (4th Cir. 2001) (new trial may be granted if court is reasonably satisfied that testimony given by material witness was false, without it jury *might* have reached different conclusion, and party seeking new trial was surprised by false testimony), *cert. denied*, 535 U.S. 991 (2002); *see also United States v. Wallace*, 528 F.2d 863, 866 (4th Cir. 1976); *United States v. Larrison*, 24 F.2d 82, 87-88 (7th Cir. 1928). This claim is without merit because the *Roberts* test is applied only when a witness recants trial testimony, and is applied in addition to the *Custis* test. *See United States v. Lofton*, 233 F.3d 313, 318 (4th Cir. 2000). No witness' testimony was recanted in this case.

Appellants also contend that the district court erred in denying the new trial motion because they have produced evidence that establishes that Alicia Bennett testified falsely when she said she did not attend a party in Lincoln County with Danny Maynard, testified falsely about who was present when she drove to Lincoln County with the Maynards on December 9, 1999, and testified falsely that she left Terry Hurley's house before the fire on December 13, 1999. While testimony from the persons whose affidavits and statements were submitted as exhibits to the new trial motion would have created a more serious credibility issue for the jury, Appellants have not shown that Bennett's testimony was actually false. More importantly, they have not shown that the government knowingly allowed Bennett to give false testimony. At most, the information they have produced is merely impeaching of Bennett's testimony and cumulative of evidence that was presented at trial by the defense. Consequently, we conclude that the district court did not abuse its discretion in denying the motion for new trial.

For the reasons discussed, we affirm the convictions. We affirm the district court's denial of the post-judgment motion for new trial. We deny Appellants' motions to remand their cases for an evidentiary hearing. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*