PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

DARYL STEVEN CARR,

      *Defendant-Appellant.*

No. 08-5037

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(2:06-cr-00014-FL-1)

Argued: December 3, 2009

Decided: January 26, 2010

Before WILKINSON, SHEDD, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

## COUNSEL

**ARGUED**: Joseph Edward Zeszotarski, Jr., POYNER SPRUILL, LLP, Raleigh, North Carolina, for Appellant. John Stuart Bruce, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M.

Hayes, Assistant United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

SHEDD, Circuit Judge:

The Armed Career Criminal Act ("ACCA") imposes a 15-year mandatory prison term on an individual convicted of being a felon in possession of a firearm if that individual has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Daryl Steven Carr pled guilty to being a felon in possession of a firearm and was sentenced as an armed career criminal to 262 months of imprisonment. The district court applied the ACCA enhancement because Carr has four prior state convictions encompassing 13 counts of felony breaking or entering under N.C. Gen. Stat. § 14-54(a). In this appeal, Carr acknowledges that he has more than three previous convictions for a violent felony,[1] but he argues that the violent felonies were not "committed on occasions different from one another" and, therefore, the ACCA does not apply. For the following reasons, we reject his contention and affirm.

I

In September 1996, a Washington County, North Carolina, grand jury issued 13 separate indictments charging Carr with felony breaking or entering in violation of § 14-54(a). Each indictment (1) alleges that on May 21, 2006, Carr broke into

---

[1]We recently reaffirmed circuit precedent that breaking or entering under § 14-54(a) is an ACCA violent felony. *See United States v. Thompson*, 588 F.3d 197 (4th Cir. 2009).

a building used as a storage unit located at "N.C. 32 South" with the intent to commit felony larceny; (2) identifies a different storage unit (units #C-15, #C-16, #D-5, #D-6, #D-7, #D-8, #D-10, #D-11, #D-12, #D-22, #F-8, #F-9, and #F-13); and (3) lists the occupant of each storage unit (totaling 10 different occupants). J.A. 23-35. Nine of the indictments list items that were stolen from the particular storage units. Carr pled guilty to all of the indictments in November 1996.[2]

In 2007, Carr was indicted on two counts of possessing a stolen firearm and one count of being a felon in possession of a firearm. According to the presentence investigative report ("PSR"), Carr's federal offense conduct involves his theft of firearms and ammunition from several law enforcement patrol cars and his subsequent act of shooting a firearm at law enforcement officers (and wounding one officer) as they attempted to stop him. He pled guilty to the felon-in-possession count.

In his PSR, a probation officer designated Carr as an armed career criminal based on the aforementioned breaking or entering convictions.[3] With this designation, Carr's sentencing guideline range was calculated to be 210 to 262 months. Carr

---

[2]We note that the indictments actually charge Carr with breaking *and* entering, but (as we explain later) the judgments correctly specify that the crime for which he was convicted is breaking *or* entering. We further note that the nine indictments listing stolen items also charge Carr with felonious larceny and felonious possession of stolen goods. Although he pled guilty to some of those charges, the parties do not argue that those crimes are relevant to our analysis. Finally, we note that 12 of the indictments list "N.C. 32, South" as being in Plymouth, North Carolina, while one indictment lists that address as being in Washington, North Carolina.

[3]In addition to the four 1996 convictions addressed herein, Carr also has state convictions for assault by pointing a gun (1995); simple assault (1995); second degree trespass (1996); shoplifting (2001); injury to real property (two separate convictions in 2002); carrying a concealed weapon, second degree trespass, and resisting a police officer (2005); larceny (2005); possession of marijuana and second degree trespass (2005); and possession of marijuana (2006). J.A. 120-23.

objected to application of the ACCA, arguing that the breaking or entering crimes were not committed on different occasions. The district court overruled the objection and sentenced him to 262 months. This appeal followed.

## II

Resolution of this appeal involves a determination of whether the record establishes that Carr committed the 13 felony breaking or entering crimes "on occasions different from one another." If it does, then the district court correctly applied the ACCA in sentencing Carr.[4] On this point, the district court surveyed our precedent, as well as several cases from other circuits, and concluded:

> The question of whether breaking and entering multiple subunits at a single complex constitutes separate occasions for purposes of the ACCA does not appear to have been squarely addressed by the Fourth Circuit. Based on persuasive authority, and the circumstances presented, the court finds that the physical and temporal proximity of the offenses at issue do not indicate that they occurred on a single occasion for ACCA purposes. To hold breaking and entering into separate storage units is a single criminal "occasion" would be to ignore the available record and the reality of the situation.

---

[4]Generally, we review a sentence in two parts: first, we review for significant procedural error, such as improperly calculating the advisory sentencing guidelines range; second, absent significant procedural error, we review for substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Although our determination of whether the ACCA enhancement applies involves review for significant procedural error, *United States v. Walker*, 555 F.3d 716, 722 (8th Cir. 2009), it involves only a "question of statutory interpretation" that we consider de novo, *United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995). Carr does not otherwise challenge his sentence.

*United States v. Carr*, 2008 Westlaw 4641346, *3 (E.D.N.C. Oct. 16, 2008). For the reasons that follow, we agree with the court's conclusion.

A.

As the district court noted, we have not decided the applicability of the ACCA in a case involving facts similar to this one. However, in several published opinions we have considered whether potential ACCA predicate offenses that were close in time or proximity were committed on different occasions for sentencing purposes.

For example, in *Letterlough*, the defendant challenged the applicability of the ACCA to his sentence, arguing that two of his three predicate offenses were not committed on different occasions. Those offenses were two separate sales of a single dose of crack cocaine to the same undercover officer on the same day; the first sale occurred at 8:35 p.m., and the second sale occurred at 10:15 p.m. Examining the operative language of the ACCA, we stated that "Congress intended to include within the scope of the ACCA only those predicate offenses that can be isolated with a beginning and an end — ones that constitute an occurrence unto themselves." 63 F.3d at 335. With this in mind, we adopted the following definition to determine whether the ACCA applies to a defendant's closely related prior crimes: "Convictions occur on occasions different from one another 'if each of the prior convictions arose out of a *separate and distinct criminal episode*.'" *Id.* (quoting *United States v. Hudspeth*, 42 F.3d 1015, 1019 (7th Cir. 1994) (en banc) (emphasis in original) (internal punctuation marks omitted)).

Continuing, we noted that "although this definition may be clear, the factual permutations surrounding the ACCA tend to create havoc. As a result, courts have applied a multiplicity of factors to determine when more than one conviction constitutes a separate and distinct criminal episode." *Id.* We listed

these factors as including whether the offenses arose in differ-
ent geographic locations, whether the nature of the offenses
was substantively different, and whether the offenses involved
multiple victims or multiple criminal objectives, and we
explained the fluid nature of the analysis:

> Courts have applied these factors independently, or
> in conjunction, to decide that a defendant's similar
> offenses are actually separate and distinct from one
> another. In essence, if any one of the factors has a
> strong presence, it can dispositively segregate an
> extended criminal enterprise into a series of separate
> and distinct episodes.

*Id.* at 336 (footnote omitted).

Applying these principles to the facts of the case, we
affirmed the application of the ACCA. In doing so, we
rejected the defendant's contention that the two drug sales
were part of a continuous drug transaction. We held instead
that each drug transaction "was a complete and final transac-
tion, and therefore, an independent offense." *Id.* at 337.

We next considered this issue in *United States v. Hobbs*,
136 F.3d 384 (4th Cir. 1998), in which the district court
declined to apply the ACCA enhancement because it found
that three of the defendant's four predicate burglary offenses
(each involving a small, unoccupied country grocery store)
occurred within the space of one hour and, consequently, did
not occur "on occasions different from one another." Analyz-
ing the case under *Letterlough*, we disagreed and remanded
for resentencing under the ACCA.

We first found that the three burglaries occurred at least a
mile apart from one another, and this fact suggested that they
were separate and distinct criminal episodes. However, we
then found that the nature of the burglaries was not substan-
tively different because "each involved a break-in of a small,

unoccupied country store from which [the defendant] stole food, cash, and/or dry goods." *Id.* at 389. We noted that this fact "while not enough on its own to suggest that the offenses occurred on the same occasion, would bolster such a conclusion, if that conclusion were also supported by other facts." *Id.* We then examined whether there were multiple victims and criminal objectives, and we found that although the objectives of the burglaries appeared similar, there were multiple victims because each store was under separate ownership. We concluded that "the fact that there were multiple victims decisively tips the scales in favor of concluding that each burglary was a 'separate and distinct criminal episode.'" *Id.* (quoting *Letterlough*, 63 F.3d at 335).

We again considered the issue in *United States v. Williams*, 187 F.3d 429 (4th Cir. 1999). The defendant in that case had four prior felony offenses, three of which stemmed from his flight from law enforcement officers at a traffic checkpoint. During the flight, which lasted 10-15 minutes and spanned over three blocks, the defendant shot at one officer (leading to a conviction for assault with a firearm on a government officer) and later pointed his firearm at two other officers (leading to two convictions for assault with a deadly weapon with intent to kill).

On his appeal from his ACCA-enhanced sentence, the defendant argued that the three assault offenses should be considered as having occurred on the same occasion for purposes of the ACCA. We disagreed, concluding under *Letterlough* and *Hobbs* that there were "two complete and discrete criminal transactions": the initial shooting at one officer and the subsequent pointing of a firearm at the other two officers. *Id.* at 431. We noted that the fact "that the events occurred within a short period of time does not dictate a result that the offenses occurred on one occasion." *Id.* We instead based our decision on the fact that the defendant had an interval of time between the two incidents that "provided him with the oppor-

tunity to reflect and desist," and that there were different vic-
tims. *Id.*

In *United States v. James*, 337 F.3d 387 (4th Cir. 2003), we
affirmed an ACCA-enhanced sentence, rejecting the defen-
dant's argument that his two prior convictions for burglary
were improperly counted for ACCA purposes because the
burglaries occurred on the same day at two different stores
that were across the street from one another. We concluded:

> Even though James committed the two burglaries on
> the same day, his two convictions clearly arose out
> of separate and distinct criminal episodes. The first
> burglary was completed before the second started,
> each burglary occurred at a different location, and
> each involved a different victim. Thus, the district
> court properly applied the armed career criminal
> enhancement to James's sentence.

*Id.* at 391 (citation omitted).

Finally, in *United States v. Leeson*, 453 F.3d 631 (4th Cir.
2006), the defendant contended that the district court erred by
counting his prior convictions for aggravated robbery and
attempted capital murder separately for ACCA purposes
because they were committed on the same occasion. The facts
of that case established that while the defendant was commit-
ting an aggravated robbery of an individual in a grocery store
(the first conviction), an off-duty police officer who was out-
side the store observed what was happening and, upon the
defendant's exit, ordered him to stop. The defendant then
fired his weapon at the officer (the second conviction).

Applying the *Letterlough* factors, we concluded that one
factor – geography – suggested that the crimes were commit-
ted in one criminal episode because they occurred on the
store's premises. However, we concluded that the other fac-
tors all pointed toward two separate and distinct criminal epi-

sodes. Specifically, we found that the crimes were distinctly different in nature, had different victims, and had different criminal objectives. Additionally, we found that the defendant "had the opportunity to make a conscious and knowing decision to cease and desist his criminal behavior or engage in yet another crime." *Id.* at 641. We concluded by rejecting the notion that because the defendant's conduct fit the description of a crime spree, the crimes were part of a single criminal episode:

> [O]ur holding today that these two offenses constitute crimes committed on occasions different from one another for purposes of increasing Leeson's sentence under the ACCA is consistent with our case law which recognizes that, criminals who commit separate crimes against different individuals while on a spree, within a short period of time, provided that the perpetrator had the opportunity to cease and desist from his criminal actions at any time[,] commit crimes on occasions different from one another.

*Id.* at 642-43 (citations and internal punctuation omitted).

### B.

Although we have not decided a factually similar case, other circuits have. Because we cited or discussed it favorably in *Letterlough*, *Hobbs*, *Williams*, and *Leeson*, the most notable of these cases is *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994) (en banc). In *Hudspeth*, the district court sentenced the defendant as an armed career criminal, relying on his three prior burglary convictions. Those burglaries occurred in a strip mall during a 35-minute period, when the defendant and his accomplices broke into a doughnut shop, a dry cleaning store, and an insurance company. From the record of that case, it appears that the burglars first broke into a door to the dry cleaning store, then used a sledgehammer to break through the shared wall between the dry cleaner and the

doughnut shop, and subsequently forced open a door between the doughnut shop and the insurance company. On appeal, the defendant unsuccessfully argued that these burglaries were not committed on different occasions for ACCA purposes.

The Seventh Circuit began its analysis by noting that "a defendant is subject to the [ACCA] sentence enhancement if each of the prior convictions arose out of a '*separate and distinct criminal episode*,'" and it listed "the nature of the crimes, the identities of the victims, and the locations" as being pertinent to the analysis of whether multiple convictions arose out of separate and distinct criminal episodes. *Id.* at 1019 (citation omitted, emphasis in original). Surveying several circuit cases, the court then explained:

> Cases interpreting the ACCA clearly uphold the minimum fifteen-year sentence enhancement for criminals who commit separate crimes against different individuals while on a spree, within a short period of time, provided that the perpetrator had the opportunity to cease and desist from his criminal actions at any time. . . .
>
> Under the ACCA, the relevant inquiry as to the timing of multiple crimes is simple: were the crimes *simultaneous* or were they *sequential*?

*Id.* at 1020-21 (emphasis in original).

Turning to the specific facts before it, the Seventh Circuit concluded that the sentence was proper because the defendant had committed "three distinct burglaries against three separate victims (the owners of three distinct business enterprises), in three separate locations over the course of more than thirty minutes. . . ." *Id.* at 1021 (footnotes omitted). Continuing, the court explained that the defendant's three burglaries "were *sequential* (committed in succession), and not *simultaneous*; it is physically impossible for one person to commit three bur-

glaries simultaneously at three different locations." *Id.* (emphasis in original).

Without attempting to catalogue all of the analogous cases, we note that other courts have reached differing results under similar facts. For example, in *United States v. Tisdale*, 921 F.2d 1095 (10th Cir. 1990), the Tenth Circuit held (consistent with *Hudspeth*) that the ACCA enhancement applied based on the defendant's three prior burglaries of separate businesses in a shopping mall. The court concluded:

> After the defendant "successfully completed" burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a separate criminal episode. Moreover, . . . the defendant's burglaries did not occur at the same location. The record shows that although defendant entered one shopping mall he had to physically break and enter three separate structures. The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations.

*Id.* at 1099; *see also United States v. Phillips*, 149 F.3d 1026 (9th Cir. 1998) (holding that the defendant's two prior convictions for burglarizing two adjacent businesses on the same night constituted separate episodes for ACCA purposes).

On the other hand, the Ninth Circuit held that the ACCA enhancement did not apply in *United States v. McElyea*, 158 F.3d 1016 (9th Cir. 1998), which involved prior burglaries of two separate stores in a strip mall. As in *Hudspeth*, the defendant and his accomplice broke into the first business and, once inside, broke through a wall into an adjoining business. The court concluded:

> The record before us does not contain any information regarding the amount of time McElyea spent in

each store or whether he stayed in one store while his accomplice entered the other store. Consequently, we cannot say that the burglaries committed by McElyea were "separate and distinct criminal episodes". Rather, we hold McElyea's acts were part of one criminal episode.

McElyea committed two identical crimes in basically the same location within a short time period. He does not meet the profile of a career criminal envisioned by Congress. Consequently, we find that McElyea's 1980 burglaries were not "committed on occasions different from one another" and the district court erred in enhancing McElyea's sentence.

*Id.* at 1021.[5]

## C.

We now turn to the specific facts before us. In sum, the record reveals that on May 21, 1996, at "N.C. 32 South," Carr feloniously broke or entered into 13 different buildings that were used by 10 different occupants as storage units. What the record does not reveal, according to Carr, is whether he broke or entered into each unit "one after another, rather than at the same time through [him] going back and forth among the units to steal items after having broken into all of the units." *Brief of Appellant*, at 5. As he explains:

---

[5]In *United States v. Fuller*, 453 F.3d 274 (5th Cir. 2006), the court found that the defendant's prior convictions for burglarizing two buildings in a short period of time could not count for ACCA purposes. The court based its decision on the fact that the record was unclear whether the defendant entered one building at the same time that his accomplice entered the other building. Under the state burglary law, the defendant could have been found criminally liable if, in fact, the burglaries were committed in that manner. *Fuller* is inapplicable here because Carr acted alone.

> [F]actually, it is possible for Carr to have committed the 13 B&Es on May 21, 1996 "simultaneously"—he could have "broken" into each storage unit first, by cutting a lock or breaking a door on each of the 13 units without entering them, and then "entered" the storage units later, going back and forth among the units and committing larceny from those units in a haphazard fashion. In this scenario, the breaking and entering of any one unit is not completed prior to institution of the next breaking and entering, and Carr would in fact be breaking and entering all of the storage units during the same period of time. Thus, factually, it is not impossible to "simultaneously" break and enter a number of storage units.

*Id.* at 15. For that reason, Carr argues that the district court erred in counting his four prior felony convictions for ACCA purposes. We disagree.

As an initial matter, we believe that Carr's argument rests on a faulty premise. Throughout his briefs, Carr refers to the 13 crimes as "breaking and entering" and, as set forth above, he contends that it is factually possible for the crimes to have occurred simultaneously. However, as we have noted, Carr was actually convicted under § 14-54(a) of felonious breaking *or* entering. This is an important distinction because "[t]he essential elements of felonious breaking or entering are (1) the breaking *or* entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Williams*, 411 S.E.2d 814, 818 (N.C. 1992) (emphasis added). Thus, "the crime described in § 14-54 allows conviction on a showing of 'breaking *or* entering,' not breaking *and* entering," *United States v. Bowden*, 975 F.2d 1080, 1084 (4th Cir. 1992) (emphasis in original); and it is therefore complete upon *either* a breaking or an entry, *State v. Myrick*, 291 S.E.2d 577, 579 (N.C. 1982).[6] Moreover, it is immaterial whether the

---

[6]Section 14-54, titled "Breaking or entering buildings generally," provides in subsection (a): "Any person who breaks or enters any building

defendant actually completed the crime of larceny. *State v. Smith*, 312 S.E.2d 222, 225 (N.C. App. 1984); *see also State v. Jones*, 157 S.E.2d 610, 611 (N.C. 1967) ("The breaking of the store window with the requisite intent to commit a felony therein completes the offense even though the defendant is interrupted or otherwise abandons his purpose without actually entering the building."). Thus, when Carr either broke into or entered each storage unit, his crime related to that unit was complete at that point regardless of whether he later returned to that unit.

With this in mind, we must determine if each of Carr's prior convictions arose out of a separate and distinct criminal episode. *Letterlough*, 63 F.3d at 335. In doing so, we consider (1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) whether the defendant had the opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense. *Leeson*, 453 F.3d at 640. We can consider these factors together or independently, and "if any one of the factors has

with intent to commit any felony or larceny therein shall be punished as a Class H felon." The "statutory offense of felonious breaking or entering is a lesser included offense of burglary in the first and second degree," *State v. Jolly*, 254 S.E.2d 1, 5 (N.C. 1979), which "includes both a breaking element and an entering element," *State v. Brown*, 626 S.E.2d 307, 312 (N.C. App. 2006). The fact that the indictments charged Carr with felonious breaking and entering is immaterial. *See State v. Reagan*, 240 S.E.2d 805, 808 (N.C. App. 1978) ("It has long been the law in this State in prosecutions under this statute (G.S. 14-54) and its similar predecessors that where the indictment charges the defendant with breaking and entering, proof by the State of either a breaking or an entering is sufficient; and instructions allowing juries to convict on the alternative propositions are proper.") (citation and quotation marks omitted); *see also State v. Armstead*, 562 S.E.2d 450, 452 (N.C. App. 2002) (noting that statutory offenses that are listed in the disjunctive are properly charged in the conjunctive).

a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes." *Letterlough*, 63 F.3d at 336.

Carr's crimes are substantively the same and arguably had the same criminal objective. However, we are most persuaded that these crimes were separate and distinct criminal episodes by the fact that (1) the crimes were committed in 13 different locations (*i.e.*, the separate storage units), *see, e.g.*, *Tisdale*, 921 F.2d at 1099 ("The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations");[7] (2) the crimes had 10 different victims, *see, e.g.*, *Hobbs*, 136 F.3d at 389 ("the fact that there were multiple victims decisively tips the scales in favor of concluding that each burglary was a separate and distinct criminal episode" (internal quotation marks omitted)); and (3) as he committed each of the 13 crimes, Carr "had the opportunity to make a conscious and knowing decision to cease and desist his criminal behavior or engage in yet another crime." *Leeson*, 453 F.3d at 641.[8] We believe that the combination of these factors establishes that Carr's prior felonies were separate and distinct criminal episodes for purposes of the ACCA.

---

[7]The record in this case is unclear whether the 13 separate storage units were actually located within one structure.

[8]Once Carr broke or entered into one storage unit, that crime was complete, and he then had the opportunity to stop his criminal conduct or continue it by breaking or entering into another storage unit. As we noted in *Hobbs*, "it is physically impossible for one person to commit three burglaries simultaneously at three different locations." 136 F.3d at 390 n.10 (quoting *Hudspeth*, 42 F.3d at 1021). Notwithstanding the difference between burglary and felonious breaking or entering, we agree with the district court that this observation applies with equal force to the facts of this case: Carr simply could not have broken into or entered the 13 separate storage units simultaneously.

## III

The district court correctly determined that Carr should be sentenced as an armed career criminal under § 924(e). Accordingly, we affirm the sentence.

*AFFIRMED*