**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 14-4655**

─────────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

      v.

GARY VINCENT SPAN,

                    Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:12-cr-00234-MOC-DSC-1)

─────────────

Argued: April 8, 2015                Decided: June 8, 2015

─────────────

Before MOTZ and GREGORY, Circuit Judges, and DAVIS, Senior Circuit Judge.

─────────────

Vacated and remanded by published opinion. Senior Judge Davis wrote the opinion, in which Judge Gregory joined. Judge Motz wrote a dissenting opinion.

─────────────

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Ross Hall Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

─────────────

DAVIS, Senior Circuit Judge:

The district court sentenced Defendant Gary Span to a mandatory minimum fifteen-year term of imprisonment pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). Span appeals his sentence, arguing that the Shepard-approved documents upon which the district court relied for the ACCA enhancement are fatally ambiguous as to whether he committed his predicate armed robbery offenses on different occasions. In the alternative, Span argues that the Fifth and Sixth Amendments prohibit a district court from making the "different occasions" assessment. We agree that the patent internal inconsistencies infecting the underlying state court documents as to the dates when the robberies occurred means, and we so hold, that the Government has failed to prove by a preponderance of the evidence that Span's prior felonies were separate and distinct criminal episodes for purposes of the ACCA. Accordingly, we vacate the district court's application of the ACCA enhancement and remand for resentencing. We need not, and accordingly do not, resolve Span's constitutional claim.

I.

Gary Span pleaded guilty to an indictment charging him with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At Span's Rule 11 plea hearing, the Government asserted that the punishment for the

2

offense was a prison term of ten years, a $250,000 fine, and a period of supervised release. The Government did not believe that Span was an armed career criminal under the ACCA, but stated that, should the United States Probation Office determine that he was, Span would be subject to a mandatory 15-year term of imprisonment. The draft presentence investigation report ("PSR") did not recommend the ACCA enhancement and the Government did not object to that determination. Lacking objections from the Government and Span, the final PSR issued on July 22, 2013.

The Government later filed an objection to the final PSR, arguing that Span was indeed an armed career criminal because his criminal record included four previous North Carolina convictions from October 2000 for robbery with a dangerous weapon, all of which were violent felonies that were committed on different occasions. The Government acknowledged, however, that the underlying state court documents evidencing his convictions listed contradictory offense dates. The Government argued that, no matter the inconsistency across the documents, the offenses were separate and distinct episodes because they involved different locations and different victims. As a result, the Government sought an increase in Span's base offense level from 17 to 33. After a three-point reduction for

3

acceptance of responsibility, Span's base offense level reduced to 30.

The Probation Officer revised the PSR to reflect: (1) Span's armed career criminal status; (2) an increased base offense level and criminal history category (level 30 and category IV); and (3) a 15-year mandatory minimum sentence. With the revisions, Span faced an increase in the Guidelines range from between 30 and 37 months to 180 months.

Span objected to his designation as an armed career criminal and argued that the facts in the PSR could not support the ACCA enhancement because they were not alleged in the federal indictment, admitted as part of his guilty plea, or proven to a jury beyond a reasonable doubt. Span argued that, to allow an increased sentence above the statutory maximum on disputed facts beyond the mere existence of his prior convictions, would be a violation of his Fifth and Sixth Amendment rights.

At sentencing on October 21, 2013, Span renewed his objections to the revised PSR. The court permitted Span and the Government additional time to brief the issues, and the sentencing hearing was continued until July 16, 2014. At the continued hearing, the court heard argument from Span and the Government as to whether Span should be classified as an armed career criminal. Span maintained his argument that the state

4

court indictments, plea transcript, and judgment were ambiguous as to when the robberies were actually committed, and that the court could not resolve the ambiguity by engaging in fact-finding and looking beyond those documents. The solution, Span asserted, was to view the ambiguity in his favor and decline to apply the ACCA enhancement.

The district court disagreed and relied on three of Span's robbery convictions to support the ACCA enhancement.[1] The court reasoned that the indictments and plea transcript listed consistent dates for the three convictions, while the judgment, which listed a different date, likely contained a transcription error.[2] The district court then reasoned that the robberies were separate criminal episodes. It noted that two of the three armed robberies occurred at the same location and involved the same corporate victim, but each offense involved a different

---

[1] The convictions supporting the ACCA enhancement have the following file numbers: 00-CRS-002827 ("2827"), 00-CRS-002829 ("2829"), and 00-CRS-002830 ("2830"). The district court omitted a fourth armed robbery conviction, file number 00-CRS-002834 ("2834"), from consideration.

[2] Notably, under North Carolina practice and jargon, a "plea transcript" is not what most federal practitioners would understand the term to suggest. It is not a verbatim account of a guilty plea colloquy among the court, counsel, and the defendant. Rather, it is a form document filled out by the participants in the course of the guilty plea proceedings containing information about the charges, the rights waived by the defendant, and other pertinent information.

5

individual victim who was put in danger. The district court found that Span had an opportunity after committing the first robbery to make a conscious decision to engage in the next one because, "after you've committed one, and you wait some days and you commit another one, you had a little time to think." J.A. 66.

The court concluded that "each of these offenses was a distinctly separate offense" and application of the ACCA enhancement was appropriate, resulting in a sentence of 180-months' imprisonment. J.A. 65.

Span has timely appealed and we possess jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

A defendant who has violated 18 U.S.C. § 922(g) qualifies for an enhanced sentence under the ACCA if the defendant has three previous convictions for a violent felony or serious drug offense, or both, and those offenses were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Government bears the burden of proving the elements necessary to support the ACCA enhancement by a preponderance of the evidence. United States v. Archie, 771 F.3d 217, 223 (4th Cir. 2014).

The parties do not dispute that Span's predicate North Carolina convictions for robbery with a dangerous weapon are

violent felonies under the ACCA. Our analysis thus centers on the district court's conclusion that the robbery offenses were committed on different occasions and the factual findings supporting that determination.

A.

We review de novo the district court's "legal conclusion" that three of Span's qualifying convictions were committed on occasions different from one another. United States v. Hobbs, 136 F.3d 384, 387 (4th Cir. 1998). However, we review the district court's factual findings, and its judgment regarding factual disputes, for clear error. Archie, 771 F.3d at 224; see also Hobbs, 136 F.3d at 387 n.5 (applying clear error review to the district court's factual findings that the defendant's three predicate burglaries occurred within an hour of each other).

The clear error standard requires "a reviewing court [to] ask whether 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234, 242 (2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). We "will not reverse a lower court's finding of fact simply because we would have decided the case differently," id. (citation and internal quotation marks omitted), but we may find clear error "where the factual determinations are not supported by substantial

7

evidence." United States v. Martinez-Melgar, 591 F.3d 733, 738 (4th Cir. 2010) (citations and internal quotation marks omitted). In other words, "clear error occurs when a district court's factual findings 'are against the clear weight of the evidence considered as a whole.'" Id. (quoting Miller v. Mercy Hosp., Inc., 720 F.2d 356, 361 (4th Cir. 1983)).

B.

In view of the evidence before the district court, we conclude that its factual finding that Span's three predicate robbery offenses were committed on separate dates was clearly erroneous. By extension, we cannot hold that, as a matter of law, Span's predicate robbery offenses were "committed on occasions different from one another" under the ACCA.

1.

To satisfy its burden under the ACCA, the Government introduced three sources: (1) the North Carolina judgment for the four robbery convictions, (2) four bills of indictment (one for each conviction), and (3) a plea transcript. The judgment provides Span's name and the file number for each offense. It indicates that Span committed three of the robberies, identified by file numbers 2827, 2829, and 2830, on the same day, January 18, 2000, and one robbery, file number 2834, on January 11, 2000. Each indictment provides the case caption, "State of North Carolina v. Gary Vincent Span," the accompanying file

8

number, the date the indictment issued (February 7, 2000), and a paragraph of factual allegations supporting the charge. The indictments corresponding to file numbers 2827, 2830, and 2834 indicate that, on December 30, 1999, December 14, 1999, and January 11, 2000, respectively, Span used a firearm to rob Pawn Mart, Inc. ("Pawn Mart"), at which time he stole currency, personal property, and other items of value in the presence of a named victim. The indictment for file number 2829 states that, on November 17, 1999, Span did the same at Cash America Pawn.

The final source, the plea transcript, identifies the file numbers for the four robbery convictions and describes the terms of Span's plea agreement. An attachment to the transcript lists the offense dates for each conviction. For three of the convictions — 2827, 2829, and 2830 — the offense dates correspond to the dates in the indictments, but those dates are handwritten above a different, illegible date, which was at some point stricken through.[3] The fourth conviction, 2834, provides an offense date of December 14, 1999. It is unclear when the dates in the plea transcript were altered and whether the alterations were made with Span's knowledge or consent.

---

[3] The district court believed that the original date in the attachment to the plea transcript was January 11, 2000. Span contends that the original date was January 18, 2000. We cannot discern which date, if either, is correct.

9

No single offense date for any predicate robbery conviction is consistent across all three sources.[4]

2.

The Supreme Court has carved out a "prior conviction" exception to judicial factfinding at sentencing. In general, the jury requirements of the Sixth Amendment and the Due Process Clause together require that "each element of a crime be proved to the jury beyond a reasonable doubt." Alleyne v. United States, 133 S. Ct. 2151, 2156 (2013). However, in Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that the fact of a prior conviction is not an element that must be alleged in an indictment in order to enhance a defendant's sentence. Facts, "[o]ther than the fact of a prior conviction," which "increase[] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (emphasis added). Accord United States v. Booker, 543 U.S. 220, 244 (2005); Blakely v. Washington, 542 U.S. 296, 301 (2004).

A sentencing judge may consult only a limited set of sources when determining the nature of a prior conviction for

_____

[4] For ease of reference, the offense dates and their corresponding sources are listed in the table attached as Appendix A.

10

the purpose of applying the ACCA enhancement. See Shepard v. United States, 544 U.S. 13 (2005) (plurality opinion). In cases involving prior guilty pleas, a sentencing judge may examine the charging document, plea agreement, plea transcript between the judge and the defendant "in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Id. at 26.[5] These "Shepard-approved" sources, unlike police reports, properly limit the inquiry of sentencing courts to "conclusive . . . judicial record[s]." Id. at 25. Such records serve a dual purpose: they avoid "collateral trials" on the underlying facts of a defendant's prior conviction, and they abate "a 'concern that a wider inquiry would violate the Sixth Amendment right to trial by jury.'" United States v. Alston, 611 F.3d 219, 226 (4th Cir. 2010) (quoting United States v. Dean, 604 F.3d 169, 175 (4th Cir. 2010)), abrogated on other grounds by United States v. Royal, 731 F.3d 333 (4th Cir. 2013).

We have held that a sentencing judge is not limited to Shepard-approved sources when merely determining the existence of an ACCA-qualifying offense. See United States v. Washington, 629 F.3d 403 (4th Cir. 2011). In that

---

[5] Cf. supra, n.2, for the North Carolina use of the term "plea transcript."

11

circumstance, a district court faced with inconsistent record evidence may look to secondary sources, such as printouts of computerized records, to engage in "fact-finding in a routine and conscientious sense." Washington, 629 F.3d at 414-15. Discrepancies in these records, "such as different dates of the same offense, 'do not upend the trial court's sound conclusion' when there is additional evidence to 'indicate the erroneous date is likely a scrivener's error.'" Archie, 771 F.3d at 225 (quoting Washington, 629 F.3d at 413) (alterations omitted).

There is no question as to the existence of Span's four ACCA-qualifying predicate convictions for robbery with a dangerous weapon. The Government's evidence surely meets the preponderance standard on that score. However, what remains unclear is when Span committed the robberies. The nature of the predicate offenses is therefore the subject of our inquiry and the district court properly looked no further than the Shepard-approved documents.[6]

---

[6] Accordingly, we reject Span's argument that the district court looked to non-Shepard-approved documents in applying the ACCA enhancement. While the district court stated before recess that it had "some other documents [it was] looking at," J.A. 59, the court made clear before announcing its sentence that it looked only to the judgment, plea transcript, and indictments. "That's what I'm using. Those appear to be the documents that have been offered." J.A. 59.

12

The documents in this case raise more questions than answers. The indictments list unique offense dates, but those dates are directly contradicted by the judgment, which states that three of the predicate offenses occurred on the same day, January 18, 2000. The district court viewed the judgment as "obviously" containing a transcription error, but the offense dates in the judgment were typewritten and nothing in the document suggests human error. The plea transcript, on the other hand, raises several concerns, not the least of which is that the original handwritten offense dates for three of the convictions were altered at a point unknown and now match the dates in three of the indictments. If anything, the attachment to the plea transcript, riddled with strikethroughs, bespeaks of transcription error and unreliability.

In finding that the three predicate armed robbery offenses occurred on separate dates, the district court necessarily had to disregard the offense dates in the judgment. Given the discrepancies in the state court documents, the district court's reliance on the indictments and plea transcript in place of the judgment is not a "permissible view[] of the evidence of record." Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985). Accordingly, we must conclude that the district court clearly erred in finding that the offenses were committed on separate dates.

13

3.

Having concluded that the district court clearly erred by finding that the predicate convictions occurred on separate dates, we now turn to the legal question of whether the offenses were committed on occasions different from one another.[7]

Offenses are deemed to have been committed on different occasions under the ACCA "when they arise out of a 'separate and distinct criminal episode.'" United States v. Boykin, 669 F.3d 467, 470 (4th Cir. 2012) (emphasis in original) (quoting United States v. Carr, 592 F.3d 636, 640 (4th Cir. 2010)). Offenses committed on the same day, or even in the span of a few hours may nevertheless be considered "separate and distinct" criminal episodes if they do not "arise from a continuous course of criminal conduct." United States v. Letterlough, 63 F.3d 332, 337 (4th Cir. 1995). The ACCA extends only to predicate offenses "that can be isolated with a beginning and an end — ones that constitute an occurrence unto themselves." Id. at 335.

We listed several factors in Letterlough to guide the determination of whether offenses have been committed on occasions different from one another. We consider:

_____

[7] While the district court omitted consideration of the fourth robbery conviction from its analysis, file number 2834, we include it as part of our de novo assessment.

14

> (1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) whether the defendant had the opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense.

Carr, 592 F.3d at 644 (enumerating factors); Letterlough, 63 F.3d at 335-36. These factors can be viewed "together or independently" and any one factor with a "strong presence . . . can dispositively segregate an extended criminal episode into a series of separate and distinct episodes." Carr, 592 F.3d at 644 (quoting Letterlough, 63 F.3d at 336).

We have declined to sanction application of the ACCA enhancement where the Government has failed to "definitively establish[]" any of the Letterlough factors indicating that the predicate offenses were committed on different occasions. United States v. Tucker, 603 F.3d 260, 266 (4th Cir. 2010). In Tucker, we vacated the district court's judgment where it was unclear from the underlying South Carolina judgments and indictments whether the defendant committed two prior second-degree burglaries of four different storage units on separate occasions. Three of the Letterlough factors — the nature and objective of the offenses and the lack of information regarding whether there had been different victims — suggested that the burglaries occurred on the same occasion. Id. at 265.

15

However, under South Carolina law, the defendant could have been held criminally responsible for the acts of his accomplice, and the underlying Shepard-approved documents did not make clear that the defendant sequentially committed the two burglaries, rather than simultaneously with the aid of his accomplice.

Moreover, the Government could not establish from the approved sources that the defendant himself entered more than one storage unit and thus, the two remaining Letterlough factors — whether the offenses had been committed in different locations, and whether the defendant had an opportunity to make a conscious decision to engage in more than one burglary — did not weigh in favor of multiple criminal episodes. Id. at 266. As a result, we were constrained to regard the two burglary convictions as one for the purposes of the ACCA. Id.

And in Boykin, we held that it was plain error for the district court to rely on facts recited in the defendant's PSR to support the ACCA enhancement because there was no indication that the facts in the PSR derived from Shepard-approved sources. 669 F.3d at 472. Given that the defendant's convictions resulted from a jury verdict, no plea colloquy or judicial factfinding existed to support the PSR's narrative. Id. at 471. Absent the factual details from the PSR, the only reliable information remaining was that the defendant was convicted of two violent felonies committed on the same day in 1980. That

16

information was too "meager" to determine whether the offenses occurred on different occasions, rendering the Letterlough factors "nearly useless." Id. at 472.

A weighing of the Letterlough factors in this case does not lead us to the conclusion that each robbery occurred on a separate occasion. First, the indictments indicate that, of the four burglaries, three were committed at the same location, Pawn Mart. Span committed one robbery at Cash America Pawn, which suggests, at most, two separate criminal episodes, not four. See Carr, 592 F.3d at 645 (reasoning that different locations of thirteen separate storage units suggested that their burglaries were separate episodes). Second, the nature and criminal objectives of the robberies remained the same; at each robbery, Span used a gun to steal money and property from a pawn shop. See Hobbs, 136 F.3d at 389 (stating that offenses with the same nature bolster the conclusion that the offenses occurred on the same occasion, if that conclusion is also supported by other facts).

Given that we cannot conclude, with any confidence, what date the offenses occurred, and, if they were committed on the same day, whether they occurred in quick succession as part of a continuous course of conduct, we hesitate to assign any significant weight to the Letterlough factor assessing whether Span had an opportunity to make a conscious and knowing decision

17

to engage in one offense after the other. Span could have committed the robberies at Pawn Mart all at once, or within a short period of time. We lack reliable information from the Government to make the distinction between the former scenario and the latter. The fact that two robberies occurred in separate locations would ordinarily indicate at least two separate criminal episodes because Span cannot be in two places at once; however, as discussed below, Span could have acted with an accomplice. Therefore, it remains entirely possible that Span was responsible for the robberies at one location and his accomplice was responsible for the robbery at a separate location. This degree of uncertainty precludes the weight of this factor from aiding the Government.

The only persuasive factor leaning in favor of four separate criminal episodes is that each indictment named a different individual victim. This factor can "decisively tip[] the scale" and dispositively segregate a crime spree into separate occasions. Hobbs, 136 F.3d at 390. We do not find this factor dispositive, however, in light of the weight of the other factors in the aggregate.

The Government counters by advancing a speculative theory that the offenses occurred on separate occasions. The Government asserts that, under North Carolina law, armed robbery requires both the taking of property and a life-threatening

18

assault, and "where a defendant takes the property of only a business but does so in the presence of multiple employees, even if threatening the life of both employees, only a single armed robbery is committed." Gov't Br. 25 (citing State v. Beaty, 293 S.E.2d 760, 764 (N.C. 1982)). Because the three Pawn Mart robberies each involved a different employee and different property of the business, they necessarily must have occurred on different occasions because they could not have been charged in separate indictments otherwise. To accept the Government's theory as true, we must first find that the named victims were employees of Pawn Mart and that only the property of Pawn Mart was stolen. We have no way of firmly making that determination from mere allegations found only in the indictments.

Casting further doubt on the Government's theory is the plea transcript, which indicates that Span may have acted with an accomplice, as it recommends "restitution jointly and severally with co-defendant." J.A. 196. Under North Carolina law, a defendant may be charged with robbery with a dangerous weapon if he aids or abets another in the commission of the offense. See N.C. Gen. Stat. Ann. § 14-87. However, a defendant's acting in concert with another is not an essential element of robbery with a dangerous weapon and need not appear in the indictment. See State v. Small, 400 S.E.2d 413, 416 (N.C. 1991) (describing the elements of robbery with a dangerous

19

weapon as "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened").

If Span did, in fact, commit three of the robberies on the same day, January 18, 2000, it remains entirely plausible that he did not act alone. As described earlier, he could have robbed Pawn Mart while an accomplice simultaneously robbed Cash America Pawn. See Tucker, 603 F.3d at 266; cf. United States v. Fuller, 453 F.3d 275, 279 (5th Cir. 2006) (vacating the defendant's ACCA enhancement because the court could not determine from the indictment whether the defendant committed the burglaries as an accomplice or acted alone).

In sum, we decline to conclude that each offense was committed on a separate occasion because application of the Letterlough factors does not lead us to that conclusion. We cannot, in good conscience, affirm the district court's application of the ACCA enhancement on this record, and we reverse the district court and remand for resentencing.

III.

Span raises an alternative argument that the Fifth and Sixth Amendments prohibit a sentencing court from determining whether a defendant's predicate convictions were committed on

20

different occasions. He draws support from the Supreme Court's recent admonition in Descamps v. United States, 133 S. Ct. 2276 (2013), against a sentencing court's consideration of facts extraneous to the elements of an underlying prior conviction for the purpose of applying the ACCA enhancement. Span contends that our decision in United States v. Thompson, 421 F.3d 278 (4th Cir. 2005), which approved a sentencing court's finding of "operative facts" inherent in the fact of a prior conviction, is in conflict with Descamps and should be overturned. We do not view Descamps to be as far-reaching as Span suggests, and we will not revisit Thompson absent a contrary Supreme Court opinion because we lack the authority to overrule another panel decision, see McMellon v. United States, 387 F.3d 329 (4th Cir. 2004) (en banc).

The defendant in Descamps had previously been convicted of burglary in California, an offense that the state defined rather broadly by not requiring the entry to have been unlawful. At sentencing, the district court reasoned that the modified categorical approach permitted it to consult documents, including the transcript of the plea colloquy, to determine whether the defendant had admitted the traditional elements of burglary, such as breaking or entering. Having determined that the defendant's conviction qualified as "a generic burglary" and thus a violent felony under the ACCA, the district court

21

enhanced the defendant's sentence. The Ninth Circuit affirmed the district court and approved an interpretation of the modified categorical approach in which sentencing judges were permitted to examine conclusive court documents to determine the factual basis of a prior conviction where the defendant had been convicted under a statute "that is categorically broader than the generic offense." 133 S. Ct. at 2283.

The Supreme Court was chiefly concerned with the Ninth Circuit's expansive view and held that, where a defendant has a prior conviction under an indivisible statute, i.e., one that does not list alternative elements, the sentencing court may not turn to the modified categorical approach to determine whether that prior conviction qualifies as a violent felony under the ACCA. The Court reiterated that the limited purpose of the modified categorical approach is "to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." Id. at 2285. A statute that does not contain alternative elements of proof, but merely defines the offense "overbroadly," does not warrant the sentencing court's reference to other documents. Id. at 2286.

Most salient for purposes of our analysis were the Court's statements regarding the Sixth Amendment roots of the categorical and modified categorical approaches. The Ninth Circuit's efforts to "discern what a trial showed, or a plea

22

proceeding revealed, about the defendant's underlying conduct" offended the Sixth Amendment because a jury must find such facts beyond a reasonable doubt. Id. at 2288. The only facts that a sentencing court can be sure a jury found are those "constituting the elements of the offense." Id. When a defendant pleads guilty, he is waiving his right to a jury trial only on the elements of the offense, and other extraneous facts, whether admitted or not, cannot be used at sentencing to enhance his punishment. Id. The majority warned that extraneous facts in aged court documents could very well be incorrect, as a defendant "often has little incentive to contest facts that are not elements of the charged offense — and may have good reason not to." Id. at 2289.

Span seizes on this language to call into question the reasoning of our decision in Thompson. There, a divided panel rejected the defendant's argument that the Sixth Amendment prohibited his ACCA-enhanced sentence because the jury did not find, nor did he admit, that his predicate convictions were for violent felonies committed on different occasions. Recognizing that a defendant's prior conviction is not a fact that a jury must find, the majority explained that data inherent in the fact of a prior conviction includes "operative facts, such as the statute which was violated and the date of conviction." Thompson, 421 F.3d at 282. The court concluded

23

that the defendant's North Carolina predicate breaking and entering convictions qualified as violent felonies under the ACCA as a matter of law. Id. at 284. And the Court reasoned that the information necessary to determine whether the convictions had been committed on different occasions was inherent in the convictions themselves. "To take notice of the different dates or locations of burglaries — something inherent in the conviction — is to take notice of different occasions of burglary as a matter of law." Id. at 286.

The tension between Descamps and Thompson, which has been described as an "outlier," United States v. Aviles-Solarzano, 623 F.3d 470, 474 (7th Cir. 2010), is apparent. Our precedent permits a sentencing court's dive into Shepard-approved documents to sort out the facts of the underlying predicate conviction, not just its elements. Descamps intimates that this analysis exceeds a sentencing court's proper role. Ultimately, we are persuaded, however, that the Supreme Court's statements in Descamps, while foreboding, will most likely be confined to identification of a violent felony under the categorical approach to the ACCA. The question of whether a defendant's predicate convictions were committed on different occasions under the ACCA more likely involves an altogether separate assessment outside of the strictures of the Descamps rationale.

24

We leave to another case on another day the continued viability of <u>Thompson</u>.

IV.

We respect our esteemed dissenting colleague's contrary view of the proper analysis and outcome in this case, but we remain unshaken in our view that the Government's evidence was insufficient to satisfy the Government's burden and thus the district court's finding here was clearly erroneous. Under the dissent's view, if some other district judge had found, as we conclude as a matter of law, that the Government's evidence was insufficient to sustain its burden of proof, then the dissent would also affirm <u>that</u> judgment as resting on findings that were not "clearly erroneous."[8] Consequently, the arbitrary, if not

---

[8] It is clear that the experienced judge in this case took no pleasure in imposing the sentence that he did:

> And so these sentences are just -- I mean we [federal judges] sort of give them out like they're M&Ms or something and then go off the bench . . . .

> I mean, you know, you're putting people away. Some people need to be warehoused and if you're in the opinion that he should be warehoused, that's fine and I can respect that. I can see that off of this that there would be disagreements about if he's reached the "let's warehouse him and lock him away forever stage," and I can respect that. But sentences that we give out are real. These are real years, and 15 years is a long time . . . .

> Now, understand that I'm not sentencing -- if I was sentencing him for the armed robberies you could bring

(Continued)

freakish, imposition of federal criminal sentences, to say nothing of mandatory minimum recidivist sentences, based on a sentencing judge's strained ability and willingness to parse for "plausible" meaning highly unreliable state court documents, would hold sway. But such a regime flies in the face of the entire remedial thrust of the Sentencing Reform Act of 1984 (SRA). The collection of Shepard documents in this case is anything but the "conclusive . . . judicial record," Shepard, 544 U.S. at 25, necessary to ensure proper respect for the Sixth Amendment. If it is not the role of federal appellate judges to normalize the achievement of Shepard's and the SRA's laudable goals of rational determinant sentencing, then we do not know what our role is expected to be.

V.

"Good enough for government work" has never been a legitimate critique of the important processes that turn the wheels of our constitutional democracy. Nowhere is it less

---

those victims in and I could hear what those victims say. I'm sentencing him for what happened that day that he got caught. I'm not sentencing him for the armed robberies. Now he's paying a price for having done those again . . . . He paid a price and then he's paying another price today for having done that. I'm sentencing him for being a felon in possession of a firearm . . . .

J.A. 75-77.

26

legitimate than in the requirement that prosecutors establish by a preponderance of the available evidence the facts necessary to justify a federal district court's imposition of a mandatory minimum recidivist sentence of a decade and a half based on dated and marked-up state court documents of questionable reliability. Accordingly, for the reasons set forth, we vacate the judgment and remand this case for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED

**APPENDIX A**

| Case Number | Indictment | Plea Transcript[*] | Judgment |
|---|---|---|---|
| 00-CRS-002827<br><br>Pawn Mart, Inc. | Offense Date:<br><br>12/30/1999 | Offense Date:<br><br>12/30/1999* | Offense Date:<br><br>1/18/2000 |
| 00-CRS-002829<br><br>Cash America Pawn | Offense Date:<br><br>11/17/1999 | Offense Date:<br><br>11/17/1999* | Offense Date:<br><br>1/18/2000 |
| 00-CRS-002830<br><br>Pawn Mart, Inc. | Offense Date:<br><br>12/14/1999 | Offense Date:<br><br>12/14/1999* | Offense Date:<br><br>1/18/2000 |
| 00-CRS-002834<br><br>Pawn Mart, Inc. | Offense Date:<br><br>1/11/2000 | Offense Date:<br><br>12/14/1999 | Offense Date:<br><br>1/11/2000 |

---

[*] For the dates in this column with an asterisk, the plea transcript contained an illegible offense date, which was stricken through and replaced with the dates listed. Span's initials do not appear by the strikethroughs and it is unclear when the offense dates were altered and whether Span agreed to the alterations.

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

With respect, I dissent.  The majority seems to me to be correct, except on one point.  That point, unfortunately, makes all the difference.

When the district court sentenced Gary Span under the Armed Career Criminal Act, it determined that he had committed three predicate state crimes "on occasions different from one another."  18 U.S.C. § 924(e)(1).  The majority correctly recognizes that the district court relied only on Shepard-approved state court documents in making this determination. The majority is also correct that, before the district court decided that Span committed the state crimes on different occasions -- a legal conclusion -- it made a factual finding that Span committed the crimes on different dates.  And the majority correctly acknowledges that we must affirm this finding of fact unless it is clearly erroneous.[1]

Where the majority falters is in concluding that the district court clearly erred in its key factual finding -- that Span committed the three predicate state crimes on different dates.  The majority reasons that the district court's reliance

---

[1] And if we do so, then we must also affirm Span's sentence because offenses committed on different dates necessarily were committed on different occasions.  See United States v. Letterlough, 63 F.3d 332, 337 (4th Cir. 1995).

29

on the indictments and plea transcript to resolve conflicting dates in the state court documents was "not a 'permissible view of the evidence.'" Op. at 13 (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)). I cannot agree. Given the evidence before the district court and the deference we must afford facts found by that court, the district court's determination here was plainly "permissible."

When sentencing courts engage in fact finding, "[p]reponderance of the evidence is the appropriate standard of proof." United States v. Grubbs, 585 F.3d 793, 803 (4th Cir. 2009). As the Supreme Court has explained, "[t]he burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (internal quotation marks and citation omitted). All the district court needed to find, therefore, was that it was more probable than not that Span committed the three predicate robberies on different dates.

For us to overturn that finding requires a good deal more. Only when we are "left with the definite and firm conviction that a mistake has been committed" may we reverse a district court's finding of fact. Easley v. Cromartie, 532 U.S. 234, 242 (2001) (internal quotation marks and citation omitted). As long

30

as "the district court's account of the evidence is <u>plausible</u> in light of the record viewed in its entirety," we must affirm, even if we are "convinced that . . . [we] would have weighed the evidence differently" as the trier of fact. <u>Anderson</u>, 470 U.S. at 573-74 (emphasis added).

I do not see how the district court's determination that Span committed the three predicate crimes on three different days is anything less than plausible. Two of the three sets of <u>Shepard</u>-approved documents introduced at sentencing indicate that Span committed the three state crimes at issue here on different days. The indictments state that Span robbed Cash America Pawn on November 17, 1999; Pawn Mart on December 14, 1999; and Pawn Mart again on December 30, 2000. The plea transcript confirms those dates. To be sure, the plea transcript also contains three crossed-out dates. But the only dates now legible on that document match the dates on the indictments. Certainly it is at least plausible that the plea transcript was edited to <u>correct</u> an error, not introduce one.

The dates in the indictments and the plea transcript do conflict with the dates in the judgment, which states that all three robberies at issue here occurred on January 18, 2000. But the fact that there was a discrepancy among the <u>Shepard</u>-approved documents did not prohibit the district court from resolving it. Making factual findings in the face of conflicting testimony,

31

documents, or other evidence is a district court's bread and butter.

Anderson, on which the majority relies, is particularly instructive on this point. There, a unanimous Supreme Court reversed this court, concluding that we had "misapprehended and misapplied the clearly-erroneous standard" when we overturned a district court's factual findings. 470 U.S. at 566. The Supreme Court explained that the clearly erroneous standard applies "even when the district court's findings do not rest on credibility determinations, but are based," as here, on "documentary evidence." Id. at 574. That is because "[t]he trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise." Id. The Court has never retreated from these guidelines, and we are not free to deviate from them.

Here, the district court acknowledged that the dates on the judgment contradicted the dates on the indictments and the plea transcript, but concluded that this was "an error" on the face of the judgment. In reaching that conclusion, the court fairly relied on the fact that two-thirds of the available evidence supported its finding. Perhaps both the indictments and the edited plea transcript are inaccurate, but it is certainly "plausible" that they are both correct. See Anderson, 470 U.S. at 574. The majority provides no additional reasons, beyond the

32

conflicting dates in the judgment and the fact that the plea transcript was edited, to suggest otherwise.[2]

I too am troubled that the length of Span's sentence hinged on the district court's parsing of inconsistent state court documents. In nearly every other instance in which a defendant's sentence jumps from a Guidelines maximum of thirty-seven months to a mandatory minimum of fifteen years, the Constitution would require a jury to find the fact triggering that increased sentence beyond a reasonable doubt. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). But to the extent the district court's decision seems unjust, it is because binding precedent tied the court's hands. See United States v. Archie, 771 F.3d 217, 223 (4th Cir. 2014); see also United States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005). In resolving a close factual question, the district court was

---

[2] In response to this dissent, the majority suggests that I would also affirm if the district court had found the "government's evidence was insufficient to sustain its burden of proof." Op. at 25. It seems to me that our role as an appellate court, not empowered to find facts, would require exactly that result. Notably, in Anderson, the Supreme Court concluded that "[b]ased on [its] own reading of the record," it could not determine that either the district court's "interpretation of the facts" or the Fourth Circuit's contrary interpretation was "illogical or implausible." 470 U.S. at 577. This conclusion, however, did not justify the Fourth Circuit's reversal of the district court given "the appropriately deferential" standard of review. Id. The majority's willingness to reverse here erases the "clear" from the "clear error" standard of review.

required to apply a relatively low standard of proof -- preponderance of the evidence. Any injustice here is the result of that standard, not a clear error on the part of the district court in applying it. Accordingly, I dissent.