**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4789

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOVON LOVELLE MEDLEY,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:17−cr−00242−PWG−1)

Argued: January 29, 2020                          Decided: May 11, 2022

Before GREGORY, Chief Judge, KING, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Judge King joined.

**ARGUED:** Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Burden Hastings Walker, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Robert K. Hur, United States Attorney, Baltimore, Maryland, Christian J. Nauvel, Special Assistant United States Attorney, Thomas M. Sullivan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

QUATTLEBAUM, Circuit Judge:

This matter returns to us after being held in abeyance pending the Supreme Court's decision in *Greer v. United States*, 14 S.Ct. 2090 (2021) and the October 6, 2021 order of this Court, sitting en banc, following that decision. Based on *Greer*, we held that appellant Jovon Medley "is not entitled to plain-error relief for his unpreserved *Rehaif* claim, and we affirm the judgment of the district court with respect to this issue." The en banc court then remanded the case to the originally assigned panel for consideration of the remaining issues presented. In response to that order, we address the remaining issues Medley raises on appeal.

I.

Jovon Medley appeals his felon in possession of a firearm conviction and sentence. Regarding his conviction, Medley challenges the district court's denial of his motion to suppress statements he made to the police, without the benefit of counsel, about the gun involved in the felon-in-possession charge. Regarding his sentence, he argues that the district court's application of a Sentencing Guidelines enhancement, based on its finding that Medley used the firearm to commit a carjacking, violated his Sixth Amendment right to a jury trial because it was based on acquitted conduct. For the reasons set forth below, we reject these arguments and affirm the judgment of the district court.

## II.

The remaining issues raised by Medley on appeal arise from his separate prosecutions by the District of Columbia and the federal government. Because of their importance to the analysis of the issues on appeal, we describe these prosecutions in detail. On December 30, 2016, Prince George's County, Maryland police officials responded to a report of a carjacking and shooting at an apartment complex. At the scene, they discovered Elton Wright, who had multiple gunshot wounds to his leg and hip. Wright had been walking to his car when a masked man with a gun confronted him and demanded his keys. When Wright tried to flee, the man shot him, took the keys and fled in Wright's car. Wright did not recognize the man, but noted that the gun appeared to be "a .45 . . . or some type of Glock." J.A. 1815.

The next day, Washington, D.C police on a routine patrol saw Medley nervously move away from a group of friends as they approached. Medley was not at that time a person of interest related to the carjacking. But when the officers identified themselves as police and began to follow Medley, he ran into a nearby house. Medley eventually responded to the officers' calls to exit the house and was detained.

The resident of the house told the officers that he did not know Medley, and that Medley entered his home without permission. The resident allowed the officers to search the part of the home where Medley had hidden. There, the officers recovered a .45 caliber semi-automatic handgun made by the Rock Island Armory ("Rock Island Firearm") and a Glock, model 17, 9mm. They arrested Medley for carrying a firearm without a license, in violation of District of Columbia law.

On January 2, 2017, Medley was charged in D.C. Superior Court with Unlawful Possession of a Firearm by a convicted felon, in violation of 22 D.C. Code § 4503(a)(1), (b)(1). That same day, the court appointed Medley a lawyer. Three days later, at his preliminary hearing, the court appointed a new lawyer at Medley's request.

Several weeks later, Darren Dalton, a detective involved with the Prince George's Country Police Department's investigation of the Maryland carjacking, received a notification from the National Integrated Ballistic Information Network database that shell casings recovered from the scene of the carjacking were possibly linked to the Rock Island Firearm recovered during Medley's arrest. Dalton asked the county's Firearms Examination Unit for an official comparison and, a few days later, they reported that the shell casings "were identified as having been fired" from the Rock Island Firearm. J.A. 1297. Looking further into Medley's D.C. case, Detective Dalton discovered that Medley was being held in a D.C. jail.

Within days, Detective Dalton and two other officers from Prince George's County traveled to D.C. to interview Medley. Dalton introduced himself to Medley as a Prince George's County detective and explained that he wished to speak about the guns recovered during his D.C. arrest. He said he was not from the D.C. police department and that he was there to discuss a Maryland carjacking investigation, not the details of Medley's D.C. case.

Detective Dalton advised Medley of his *Miranda* rights, and Medley indicated he understood them. During the interview Medley did not mention his appointed counsel in the D.C. case, ask for the conversation to stop or request a lawyer. Dalton testified that at

4

the time of the interview, he did not know that Medley was represented by an attorney in his D.C. case.

Medley told Detective Dalton that he purchased the Rock Island Firearm four days before his arrest in D.C. He stated that he was the only person to possess the gun during that four-day period. When Medley became hesitant about answering more of Dalton's questions, Dalton stopped the interview.

Based in part on Medley's statements, a federal grand jury in the District of Maryland indicted Medley for carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119(2); using, brandishing, carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). The felon-in-possession count listed the Rock Island Firearm recovered during Medley's D.C. arrest as the relevant firearm.

Medley moved to suppress the statements he made to Detective Dalton. He argued that Dalton obtained those statements "in violation of . . . his right to counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution." J.A. 8. The district court denied Medley's motion, holding that the officers did not violate Medley's Fifth Amendment rights or Sixth Amendment right to counsel because Medley voluntarily waived those rights by answering Dalton's questions without an attorney present after receiving *Miranda* warnings. The district court explained that because Medley "didn't ask for counsel" and "didn't invoke counsel" after receiving his *Miranda* warnings, the police were free to question him. J.A. 599. Relying on *Montejo v. Louisiana*, 556 U.S. 778 (2009),

5

the court held Medley's waiver of his *Miranda* rights also waived his Sixth Amendment right to counsel.

After a five-day trial,[1] the jury convicted Medley of the felon-in-possession charge, but acquitted him of the two charges related to the carjacking. At sentencing, the presentence investigation report ("PSR") assigned Medley a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A), based on a 1997 conviction for second degree murder. Medley did not object to this base offense level. But he did object to Probation adding a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Medley used the Rock Island Firearm in connection with another felony—the carjacking of Elton Wright. This produced a total offense level of 24 and a criminal history category of IV, yielding an advisory Guidelines range of 77–96 months in prison. Medley argued that the § 2K2.1(b)(6)(B) enhancement should not apply because he had been acquitted of the carjacking charges and, therefore, the evidence did not establish that he committed the carjacking. Probation disagreed and declined to amend the PSR.

The district court agreed with Probation finding, by a preponderance of the evidence, that Medley used the Rock Island Firearm in connection with the carjacking of Wright. It then adopted the PSR's enhanced Guidelines calculations and sentenced Medley to 78 months imprisonment, followed by three years of supervised release.

---

[1] Before the trial in the District of Maryland, Medley pled guilty in D.C. Superior Court to the felon-in-possession of a firearm charge, in violation of 22 D.C. Code § 4503(a)(1), (b)(1). Medley agreed that if the case proceeded to trial, it would have been proven that he possessed the Rock Island Firearm on the date of the carjacking.

Medley filed a timely notice of appeal, challenging both his conviction and his sentence. As to the conviction, Medley contends the district court violated his Sixth Amendment right to counsel by admitting the statements he made to Maryland police after he was appointed counsel in his D.C. case. Regarding his sentence, Medley first argues that the enhancement violated his Sixth Amendment right to a jury trial because it was based on acquitted conduct. He also contends that the district court clearly erred by enhancing his sentence after finding—based on a preponderance of the evidence—that he used the Rock Island Firearm in connection with the Maryland carjacking. This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

III.

We first address Medley's argument that the district court violated Medley's Sixth Amendment right to counsel by admitting the uncounseled statements made to Maryland police after he was appointed counsel in his D.C. case. In doing so, we review the factual findings underlying the district court's motion to suppress for clear error and its legal conclusions de novo. *United States v. Lentz*, 524 F.3d 501, 520 (4th Cir. 2008).

Medley acknowledges that he was not federally charged at the time of the interview, but argues that the federal felon-in-possession charge constitutes the "same offense" as the D.C. felon-in-possession charge for Sixth Amendment purposes. Therefore, he claims that

his Sixth Amendment right to counsel attached prior to his federal indictment.[2] Medley also argues that the government did not show that he knowingly and voluntarily waived his right to counsel when he answered Detective Dalton's questions. Instead, he claims that Dalton led him to believe that he was speaking "*only* about a separate investigation in Maryland—*not* about his D.C. case." Appellant's Opening Brief at 34 (emphasis original). As a result, Medley argues that the admission of his statements at trial violated the Sixth Amendment.

A.

We begin by considering whether Medley's Sixth Amendment right to counsel attached to his federal felon-in-possession charge at the time of the interview. The Sixth Amendment right to counsel guarantees a criminal defendant "the right to have counsel present at all 'critical' stages of the criminal proceedings," including interrogation by the government. *Montejo*, 556 U.S. at 786. This right, however, does not attach until adversarial judicial proceedings commence "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001) (quoting *McNeal v. Wisconsin*, 501 U.S. 171, 175 (1991)). Because this right is "offense specific," it can only be invoked regarding offenses for which the defendant has been formally charged. *Cobb*, 532 U.S. at 168 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 176

---

[2] Although Medley argues that his D.C. and federal felon-in-possession charges are the "same offense" under double jeopardy analysis, he never claims that charging him for the same conduct under the D.C. and U.S. criminal codes constitutes punishing him twice for the same offense under the Fifth Amendment's Double Jeopardy Clause. He only argues that the two offenses are "the 'same' for Sixth Amendment right-to-counsel purposes." Appellant's Opening Brief at 48.

(1991)); *United States. v. Holness*, 706 F.3d 579, 589 (4th Cir. 2013). There is no exception that allows the right to be invoked for uncharged offenses that are merely "factually related" to a charged offense. *Cobb*, 532 U.S. at 168.

However, "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Cobb*, 532 U.S. at 173. Because this rule stems from Double Jeopardy concerns, "the dual sovereignty doctrine [also] applies for the purposes of defining what constitutes the same offense for right-to-counsel purposes." *Holness*, 706 F.3d at 591. Therefore, for the "same offense" exception to apply, the charged and uncharged offenses must be prosecuted by the same sovereign and the *Blockburger* test must be met.

As noted above, Medley concedes that he was not federally charged at the time of his interview. However, he argues that the right to counsel nevertheless attached to his federal felon-in-possession charge because it is the same offense as the D.C. felon-in-possession charge. In evaluating this claim, we would first consider whether the District of Columbia and federal government are the same sovereign before turning to whether the D.C. and federal felon-in-possession statutes satisfy the *Blockburger* test. *See Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) ("We have long held that a crime under one sovereign's laws is not "the same offence" as a crime under the laws of another sovereign . . . a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute.")

9

B.

But we need not decide whether Medley's District of Columbia and federal felon-in-possession charges are the "same offense" under double jeopardy analysis, nor do we need to analyze District of Columbia and federal government are the same sovereign for purposes of this analysis. Even assuming, without deciding, that Medley's Sixth Amendment right to counsel had attached to his federal felon-in-possession charge on the day that he was questioned by Detective Dalton, Medley waived the right because he never made a clear, unambiguous assertion of the right to counsel after receiving his *Miranda* warnings.

A defendant who wishes to invoke his Sixth Amendment right to counsel must affirmatively do so. *Montejo*, 556 U.S. at 797. Accordingly, the government is permitted to initiate contact with a represented criminal defendant, subject only to the requirement that the questioning stop if a defendant adequately asserts this right. *Id.* at 789. While "a defendant who does not want to speak to police without counsel present need only say as much when he is first approached and given *Miranda* warnings," *Id*. at 794–95, the request for counsel must be clear and unambiguous. *See, e.g., Montejo*, 556 U.S. at 797 (holding that a suspect is required to make "a clear assertion of the right to counsel."); *Davis v. United States*, 512 U.S. 452, 459 (1994) (holding "the suspect must unambiguously request counsel."). This standard is met if a defendant "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459 (internal citation omitted).

10

A defendant's failure to invoke his Sixth Amendment right to counsel may constitute a waiver of that right. However, such a waiver is only permitted if it is "voluntary, knowing, and intelligent." *Montejo*, 556 U.S. at 786; *see also Patterson v. Illinois*, 487 U.S. 285, 291–292 (1988). To determine if a Sixth Amendment waiver is knowing and voluntary, courts look to whether the defendant received his *Miranda* warnings and if he subsequently agreed to waive those rights. *See Montejo*, 556 U.S. at 798–99. An accused who has properly received his *Miranda* warnings "has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 487 U.S. at 296; *see also Montejo*, 556 U.S. at 786 ("[W]hen a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick . . ."). Because "the decision to waive need not itself be counseled . . . [t]he defendant may waive the right whether or not he is already represented by counsel . . . ." *Montejo*, 556 U.S. at 786.

Turning to the facts here, Medley never made a clear, unambiguous assertion of his right to counsel after receiving his *Miranda* warnings. He did not request his attorney, ask for the interview to stop or say anything that "a reasonable police officer in the circumstances would understand . . . to be a request for an attorney." *Davis*, 512 U.S. at 459 (internal citation omitted). Instead, Medley knowingly and intelligently waived his right to counsel by voluntarily answering Dalton's questions after being properly informed of his *Miranda* rights. *See Patterson*, 487 U.S. at 296.

11

That, however, does not end our waiver inquiry. A defendant who waives his Sixth Amendment right to counsel may still challenge his waiver by establishing it was based on misrepresentation or deception by the State. *See Montejo*, 556 U.S. at 798. Medley argues Detective Dalton misled him by stating that he was not interested in Medley's D.C. case. He claims that, because of Dalton's statement, Medley did not understand that by answering Dalton's questions, he was waiving his right to counsel regarding his D.C. felon-in-possession charge. Appellant's Opening Brief at 38. As a result, Medley claims that he "did not knowingly and intelligently waive his Sixth Amendment right to counsel *in the D.C. case*." *Id*. at 29 (emphasis original). However, this is an appeal from Medley's *federal* case and only concerns whether he waived his right to counsel regarding his *federal* charges. The use of Medley's statements in his D.C. case is not at issue here.

What is at issue is whether Dalton's representations prevented Medley from making a knowing or voluntary waiver of his Fifth or Sixth Amendment rights regarding his subsequent federal charges. Medley does not even make this claim and, even if he had, we see no support for it in this record. At the beginning of the interview, Dalton told Medley that he was not interested in Medley's D.C. case. Dalton testified that at the time of the interview, the only charges he was investigating in relation to the Maryland carjacking were "attempted murder, shooting and a[n] armed carjacking." J.A. 345. Medley points to nothing in the record suggesting this statement was not true.

Further, the subsequent federal indictment of Medley for both the carjacking and felon in possession charges does not establish that Dalton's representations to Medley were false. Dalton was responsible for conducting a *state* carjacking investigation. The

12

subsequent *federal* decision to use Medley's statements to add a felon-in-possession charge does not show that Dalton tricked Medley into waiving his Sixth Amendment right to counsel. Accordingly, even if Medley's Sixth Amendment right to counsel attached to his federal felon-in-possession charge at the time of the interview, which it had not, Medley waived that right by answering Dalton's questions after being informed of his *Miranda* rights.

## IV.

We now turn to Medley's claim that the district court erred by enhancing his sentence after finding—based on a preponderance of the evidence—that he used the Rock Island Firearm in connection with the carjacking of Elton Wright. This argument has two components. First, Medley claims that the sentencing enhancement violated his Sixth Amendment right to a jury trial because it was based on acquitted conduct. Second, he argues that the district court's application of the Guidelines enhancement constituted clear error because there was insufficient evidence to find that he committed the Maryland carjacking. We address each issue in turn.

## A.

Medley first argues that the sentencing enhancement violated his Sixth Amendment right to a jury trial because it was based on acquitted conduct. "Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict" *United States v. Grubbs*, 585 F.3d 793, 799

13

(4th Cir. 2009) (quoting *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir.2008)); *see also United States v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019) ("When sentencing courts engage in fact finding, preponderance of the evidence is the appropriate standard of proof.") (internal citation omitted). Relevant here, this includes conduct for which a defendant has been acquitted. "[C]lear Supreme Court and Fourth Circuit precedent hold that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." *Grubbs*, 585 F.3d at 798–99. In *United States v. Watts*, 519 U.S. 148, 157 (1997), the Supreme Court clearly stated that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Likewise, in *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994), this Court held that a "defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them" at sentencing if the government "establish[es] the existence of these other incidents by a preponderance of the evidence."

Following those cases, if the Guidelines are treated as advisory, and the sentence does not exceed the statutory maximum, a court's consideration of acquitted conduct "'does not violate the Sixth Amendment' . . . because 'as far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts.'" *Grubbs*, 585 F.3d at 799 (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465–66 (2007)). As a result, while a "[a] defendant can challenge the district court's factual findings as well as the extent of the district court's reliance on those findings as part

14

of his appeal . . . the court's underlying ability to make factual findings regarding uncharged [or acquitted] conduct does not violate the Sixth Amendment's jury trial guarantee." *Grubbs*, 585 F.3d at 799.

To his credit, Medley concedes that his Sixth Amendment challenge to the use of acquitted conduct as the basis for his Guidelines sentence enhancement is foreclosed by Supreme Court and Fourth Circuit precedent. However, consistent with a growing number of critics of this practice,[3] he explains his objections to it. Whether or not we agree or disagree with the precedent from the Supreme Court and this Court, we are bound to follow it. *See generally McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004).

---

[3] *Jones v. United States*, 135 S. Ct. 8, 9 (2014) (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from denial of certiorari) (sentencing enhancements based on acquitted conduct "disregard[ ] the Sixth Amendment"); *Watts*, 519 U.S. at 170 (Kennedy, J., dissenting) (allowing district judges "to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal."); *United States v. Martinez*, 769 Fed. App'x. 12 (2d Cir. 2019) (Pooler, J., concurring) (stating that the district court's practice of using acquitted conduct to enhance a defendant's sentence is "fundamentally unfair" and runs afoul of the Sixth Amendment); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of rehearing en banc) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."); *id*. at 930 (Millett, J., concurring in denial of rehearing en banc) ("[A]llowing judges to materially increase the length of imprisonment based on facts that were *submitted directly to and rejected by* the jury in the same criminal case is too deep of an incursion into the jury's constitutional role.") (emphasis original); *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (stating that whether the Constitution allows a district court to either decrease or increase a defendant's sentence based on facts found "without the aid of a jury or the defendant's consent" is "far from certain"); *United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring) ("[T]he consideration of 'acquitted conduct' to enhance a defendant's sentence is unconstitutional."); *United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., concurring specially) ("[S]entence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment.").

Accordingly, the district court's use of acquitted conduct as the basis for a Guidelines sentencing enhancement did not violate Medley's Sixth Amendment right to a jury trial.

B.

Medley also argues that the district court's application of this sentencing enhancement, based on its finding that Medley used the Rock Island Firearm to carjack Elton Wright, constituted clear error. Instead, he claims that "substantial evidence" demonstrates that someone else committed the carjacking. Appellant's Opening Brief at 57.

When evaluating a sentencing court's calculation of the advisory Guidelines range, this Court reviews "the district court's factual findings, and its judgment regarding factual disputes, for clear error." *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015). We "will not reverse a lower court's finding of fact simply because we would have decided the case differently." *Id.* (citations omitted). Instead, clear error occurs when the lower court's "factual findings are against the clear weight of the evidence considered as a whole." *Id.* (citations and quotation marks omitted).

With that standard in mind, we turn to the district court's decision. In support of its finding that Medley used the Rock Island Firearm in the carjacking of Wright, the district court pointed to the testimony of several eyewitnesses at the scene who identified Medley as the carjacker. It also relied on the testimony of Scott McVeigh from the Prince George's County Police Department's firearms examination unit. Without objection from Medley, the district court qualified McVeigh as an expert in firearm toolmark analysis. McVeigh

16

testified that guns leave certain markings on bullets that they fire. Forensic firearm examiners attempt to match bullets or shell casings from a crime scene to a particular gun by comparing the marks on the recovered evidence—known as "toolmarks"—with marks on those test-fired from the gun in question. McVeigh testified about his evaluation and report that the shell casings found at the scene of the carjacking were fired from the Rock Island Firearm. The district court also pointed to the testimony of Richard Fennern, an agent with the Federal Bureau of Investigation's Cellular Analysis Survey Team, regarding the historical cell-site data of Medley's cellphone. Without objection, the district court qualified Agent Fennern as an expert in historical cell-site data. When Agent Fennern performed historical cell-site analysis on a phone number linked to Medley, he determined that on December 31, 2016, at about thirty minutes before the carjacking, Medley's phone placed a call in the cell-tower sector covering the apartment complex where the carjacking took place.

Medley argues this evidence is insufficient to support the district court's finding. Medley first criticizes the testimony from eyewitnesses who identified him at the scene. He emphasizes that Elton Wright—the carjacking victim—could not identify his assailant due to the mask that he was wearing. Wright described the assailant as a heavier black male who was a little over six-feet tall, a contrast from Medley's shorter, leaner frame. Wright also testified he had known Medley for about three years and saw him two to three times a week and thus it would be easy for him to recognize Medley's voice. J.A. 1823. However, Wright did not recognize the voice, appearance or walk of the man who shot him. And

17

Medley also argues that Wright and the other eyewitnesses offered physical descriptions of the assailant that did not clearly implicate Medley and were, at times, inconsistent.

Medley also attacks McVeigh's testimony. Appellant's Opening Brief at 62. Medley criticized the subjective nature of McVeigh's testimony, as well as his concession that there were some inconsistencies between the shell markings and markings that would come from the equipment at the Rock Island factory and the fact Medley's testimony amounted only to an opinion that the markings on the shell were consistent with a .45 caliber gun and not the specific Rock Island Firearm.[4]

Finally, Medley argues Fennern's testimony was insufficient to support the district court's finding that he was the carjacker. He pointed to Fennern's concession that cell-tower data can be used to determine the "general location" of a cellphone at the time of a specific call, J.A. 2046, and that he could not determine the exact location of a phone based on the nearest cell towers. Therefore, Medley argues that the fact that his phone was in the same "general location" of Wright's apartment on the morning of the carjacking has "minimal probative value." Appellant's Opening Brief at 63.

Medley's arguments have some appeal. However, on this issue, we do not work from a clean slate. We are bound to affirm the district court's factual findings unless they "are against the clear weight of the evidence considered as a whole." *Span*, 789 F.3d at 325 (citations and quotation marks omitted). Clear error review requires deference to the trial

___

[4] Medley's arguments about McVeigh's testimony go primarily to its reliability. But he did not make a *Daubert* motion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Since no such motion was made, we will not address McVeigh's qualifications or the reliability of his testimony.

court's findings even if we may view certain issues differently. *Id*. Under that high standard, we cannot say that the district court erred by enhancing Medley's sentence when it found, based on a preponderance of the evidence, that he used the Rock Island Firearm in connection with the carjacking of Elton Wright.

V.

For the reasons set forth above, we conclude that the district court did not violate Medley's Sixth Amendment right to counsel by admitting the uncounseled statements that he made to Maryland police after he was appointed counsel in his D.C. case. We also find that Medley's Sixth Amendment challenge to the use of acquitted conduct as the basis for his Guidelines sentence enhancement is foreclosed by Supreme Court and Fourth Circuit precedent. Finally, the district court did not err by enhancing Medley's sentence when it found, based on a preponderance of the evidence, that he used the Rock Island Firearm in connection with the carjacking of Elton Wright. Accordingly, the district court's judgment is

*AFFIRMED.*